THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRANCE F. THOMPSON,   :
         :
   Plaintiff,   :
         :
   v.    :  Civil Action No.: 05-0274 (GMS)
         :
DOVER DOWNS, INC.,   :
         :
   Defendant.   :

OPENING BRIEF IN SUPPORT OF
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Date: April 28, 2006

Noel C. Burnham (DE Bar No. 3483)
Richard M. Donaldson (DE Bar No. 4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7840

*Counsel for Defendant Dover Downs, Inc.*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................... 1

III.   SUMMARY OF THE ARGUMENT ............................................................................ 2

IV.    CONCISE STATEMENT OF FACTS ......................................................................... 3

      A.    Dover Downs Hired Thompson at 60 Years of Age and Only Terminated
           Thompson's Employment Because He Lied on his Job Application. ................... 3

      B.    Thompson Worked as a Maintenance Mechanic I and Was Treated
           Fairly By His Supervisors. ..................................................................................... 4

      C.    Thompson Continued to Work as a Maintenance Mechanic I and
           Did Not Apply for a Promotion in 2004. .............................................................. 5

      D.    Thompson Was Absent and Tardy During 2004 .................................................. 7

      E.    Although He Had Not Applied for a Promotion in 2004, Thompson
           Filed a Charge of Discrimination, In Which He Alleged that
           Dover Downs Had Denied Him a Promotion Because of His Age. ...................... 8

V.     ARGUMENT: THE COURT SHOULD GRANT SUMMARY JUDGMENT IN
      FAVOR OF DOVER DOWNS ON ALL COUNTS BECAUSE THERE IS NO
      DISPUTE OF MATERIAL FACT AND DOVER DOWNS IS ENTITLED TO
      JUDGMENT AS A MATTER OF LAW ..................................................................... 9

      A.    Dover Downs Is Entitled To Summary Judgment On Thompson's
           Claim of Age Discrimination (Counts I & V). .................................................... 10

      B.    Dover Downs Is Entitled To Summary Judgment On Thompson's
           Claim of Retaliation (Count II). ........................................................................... 16

           1.    Disciplinary Warning Notices .................................................................. 17

           2.    Bonus ........................................................................................................ 18

           3.    Workload ................................................................................................... 20

           4.    Transportation to Hospital ........................................................................ 20

           5.    Camera in Paint Shop ............................................................................... 21

      C.    Thompson Cannot Succeed on his Claim of Breach of ...................................... 22

      D.    Thompson Cannot Succeed on his Failure to Promote Claim (Count VI) .......... 23

VI.    CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**CASES**

Allen v. Amtrak
        2005 U.S. Dist. LEXIS 19624 (E.D. Pa. Sept. 6, 2005) .............................................. 14, 15

Amtrak v. Morgan
        563 U.S. 101 (2002) ................................................................................................ 11

Bailey v. United Airlines
        279 F.3d 194 (3d Cir. 2002) .................................................................................... 11

Baker v. Wilmington Trust Co.
        320 F. Supp.2d 196 (D. Del. 2004) ........................................................................ 16, 17

Benningfield v. City of Houston
        157 F.3d 369 (5th Cir. 1998) .................................................................................. 19, 20

Borough of West Mifflin v. Lancaster
        45 F.3d 780 (3d Cir. 1995) ...................................................................................... 22

Brown v. Brody
        199 F.3d 446 (D.C. Cir. 1999) ................................................................................ 12

Crumpton v. Potter
        305 F. Supp.2d 465 (E.D. Pa. 2004) ...................................................................... 15, 19

Dungee v. Northeast Foods, Inc.
        940 F. Supp. 682 (D.N.J. 1996) .............................................................................. 14

EEOC v. Wyeth Pharm.
        2004 U.S. Dist. LEXIS 4382 (E.D. Pa. Mar. 11, 2004) ......................................... 19

Fuentes v. Perskie
        32 F.3d 759 (3d Cir. 1994) ...................................................................................... 10, 19

Galabaya v. N.Y.C. Bd. of Educ.
        202 F.3d 636 (2d Cir. 2000) .................................................................................... 20

Keller v. Orvix Credit Alliance
        130 F.3d 1101 (3d Cir. 1997) .................................................................................. 10, 13, 14

Martinez v. Potter
        347 F.3d 1208 (10th Cir. 2003) .............................................................................. 15

# TABLE OF AUTHORITIES
### (continued)

Page

Merrill v. Crothall-American, Inc.
   606 A.2d 96 (Del. 1992) ................................................................. 22

Nat'l Cash Register v. Riner
   424 A.2d 669 (Del. Super. Ct. 1980) ............................................. 10

Robinson v. City of Pittsburgh
   120 F.3d 1286 (3d Cir. 1997) ................................................... 18, 21

Saldana v. Kmart Corp.
   260 F.3d 228 (3d Cir. 2001) ............................................................ 9

Sarko v. Henderson
   2004 U.S. Dist. LEXIS 22194 (E.D. Pa. Oct. 29, 2004) ............... 13

Scott v. State of N.J.
   143 Fed. App'x 443 (3d Cir. 2005) ............................................... 12

Urban v. Henderson
   2001 U.S. Dist. LEXIS 5531 (E.D. Pa. Apr. 5, 2001) ................... 19

Waiters v. Parsons
   729 F.2d 233 (3d Cir. 1984) ......................................................... 14

Watson v. Eastman Kodak Co.
   235 F.3d 851 (3d Cir. 2000) ......................................................... 11

Weston v. Pennsylvania
   251 F.3d 420 (3d Cir. 2001) .................................................... 16, 18

## STATUTES

19 Del. C. § 711 ............................................................................. passim

19 Del. C. § 712 ................................................................................... 11

28 U.S.C. § 1367(c) ............................................................................. 22

29 U.S.C. § 621 ..................................................................................... 1

29 U.S.C. § 626(d)(2) ........................................................................... 11

I.    **INTRODUCTION**

Defendant Dover Downs, Inc. ("Dover Downs" or the "Company") hired Plaintiff Brance F. Thompson ("Thompson") in 2001 at age 60 and terminated him only recently when it discovered that he had lied about his criminal record on his job application.

Thompson brought this lawsuit against Dover Downs alleging, inter alia, that he was denied two "promotions" in 2004 because of his age and that Dover Downs took certain acts against him in retaliation for a Charge of Discrimination he filed in 2004. The indisputable evidence shows that Thompson did not apply for one of the positions he calls a promotion and that the second alleged "promotion" was actually a non-promotional lateral transfer. Moreover, Thompson has no evidence to suggest that his age played any role in the Company's decision making for these jobs. His assertion that it was discrimination because he was older than the successful candidate will not suffice under the law.

Like his discrimination claim, Thompson's remaining claims cannot survive summary judgment. Thompson has suffered no adverse employment action as a result of his Charge of Discrimination, and the acts he alleges to be retaliatory are trivial matters that resulted in no change in his employment status. Additionally, Dover Downs had a legitimate, nonretaliatory reason for its actions, and Thompson has produced no evidence to rebut this reason.

Accordingly, Dover Downs respectfully requests that the Court grant summary judgment in its favor on all claims alleged in Thompson's Complaint.

II.    **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

In this lawsuit, Plaintiff Brance F. Thompson brings claims of: (1) age discrimination, in violation of the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and the Delaware Discrimination in Employment Statute, 19 Del. C. § 711 ("§ 711")

(Counts I & V); (2) retaliation, in violation of the ADEA and § 711 (Count II); (3) breach of covenant of good faith and fair dealing (Count III); and failure to promote (Count VI).[1]

Thompson alleges that Dover Downs discriminated against him by: (1) failing to promote him to a supervisory position and (2) failing to provide him with light duty work after he suffered an injury.  Thompson alleges that Dover Downs retaliated against him for filing a Charge of Discrimination by: (1) giving him disciplinary warning notices; (2) denying him a bonus; (3) increasing his workload; (4) refusing to transport him to the hospital when he felt ill in January 2005; and (5) placing a surveillance camera in the paint shop where he kept his supplies.

The parties have completed discovery in this matter.  Through discovery, it has become clear that Thompson has no basis for his claims.  Accordingly, Dover Downs asks this Court to enter summary judgment in its favor and against Thompson on all counts of the Complaint.

## III.    SUMMARY OF THE ARGUMENT

1.    Dover Downs is entitled to summary judgment on Thompson's age discrimination claim because (a) Thompson has no evidence that his age played any role in the alleged discriminatory acts, and (b) Dover Downs has a legitimate, nondiscriminatory reason for its actions that Thompson has not rebutted.  Furthermore, some of the acts Thompson alleges to be discriminatory are barred by the statute of limitations and/or Thompson's failure to exhaust his administrative remedies, while others do not rise to the level of an adverse employment action.

2.    Dover Downs is entitled to summary judgment on Thompson's retaliation claim because he has suffered no adverse employment action.  Moreover, Dover Downs had a legitimate, nonretaliatory reason for the acts alleged to be retaliatory.

---

[1] There is no Count IV in Thompson's Complaint.

3.     Because summary judgment is proper on the federal claims, this Court should dismiss Thompson's state law claim for breach of covenant of good faith and fair dealing. Even if this Court were to exercise jurisdiction, the claim could not survive summary judgment because there is no evidence of fraud, deceit, or misrepresentation on the part of Dover Downs, and Thompson has suffered no damages.

4.     Dover Downs is entitled to summary judgment on Thompson's failure to promote claim, as this claim is premised on Thompson's age discrimination claim – which, as stated above, cannot withstand summary judgment.

## IV.   CONCISE STATEMENT OF FACTS

### A.     Dover Downs Hired Thompson at 60 Years of Age and Only Terminated Thompson's Employment Because He Lied on his Job Application.

Dover Downs has a facility in Dover, Delaware that operates a casino and hotel and harness racing track. Thompson is a former employee of Dover Downs, whose employment was terminated during discovery in this case when he admitted that he lied on his job application.

Thompson was an employee of Dover Downs for approximately five years prior to his termination. Thompson began his employment with Dover Downs at 60 years of age, and he worked as Maintenance Mechanic I throughout his employment. See Appendix to Defendant's Opening Brief in Support of its Motion for Summary Judgment ("Def.'s App.") at A0003 (Pl. Dep. at 10-11). Although a Maintenance Mechanic I has responsibilities in all areas of general maintenance, Thompson was hired because of his experience in painting, and his primary job at Dover Downs was painting. See id. at A0004 (Pl. Dep. at 25); A0025 (Duncan Dep. at 14). As a Maintenance Mechanic I, one of Thompson's essential job functions was also to "direct tasks for Maintenance II and III[s]" that worked with him. See id. at A0056 (Job Description of Maintenance Mechanic I); A0005 (Pl. Dep. at 27).

The Dover Downs Application for Employment asked the following question: "Other than minor traffic violations, have you ever been convicted of any criminal or disorderly persons offense?." Thompson replied "No." See id. at A0054-A0055 (Pl.'s Job Application). Thompson admitted in his deposition that his answer was a lie – contrary to his representation on his job application, Thompson has two convictions for burglary and he served approximately 18 years in prison. See id. at A0023 (Pl. Dep. at 215). Dover Downs terminated Thompson's employment on April 10, 2006.[2]

**B.      Thompson Worked as a Maintenance Mechanic I and Was Treated Fairly By His Supervisors.**

The Maintenance Department at Dover Downs includes Outside Maintenance (grandstands, outside structure, and grounds) and Inside Maintenance (interior of the hotel and casino). Thompson worked in Inside Maintenance throughout his tenure, and was assigned to various shifts. When he first began at Dover Downs, Thompson worked on the Second Shift, and his supervisor was Robert Morrison, the Second Shift Supervisor. See id. at A0005 (Pl. Dep. at 28). Thompson testified that he "got along great" with Morrison, and that Morrison treated him fairly at all times "when he worked under him." See id. at A0009 (Pl. Dep. at 44-45).

At some point over the next year or so, Thompson switched to the Third Shift because it was a better time for him to complete his painting, as the casino was closed for much of that shift. See id. at A0006 (Pl. Dep. at 30); A0033 (Morrison Dep. at 16). While Thompson was on the Third Shift, Morrison continued to supervise and evaluate Thompson and his work. See id. at A0006 (Pl. Dep. at 31). Thompson worked with two other employees on the Third Shift,

_____

[2] The Application for Employment specifically stated that any "misrepresentation or omission of facts called for is cause for dismissal." See Def.'s App. at A0054-A0055 (Pl.'s Job Application). Thompson's termination is not an issue in this case.

Kevin Gorlich and Nate Whitecomb. See id. at A0006 (Pl. Dep. at 32-33). Because Gorlich and

Whitecomb were Maintenance Mechanic IIs, Thompson directed tasks for both. See id. at

A0007 (Pl. Dep. at 35-36); A0044 (Whitecomb Dep. at 13); A0056 (Job Description of

Maintenance Mechanic I).[3]

In September 2002 at age 61, Thompson was in a car accident. Dover Downs kept his

employment open for him during his recovery time, and Thompson returned to work

approximately one year later. See id. at A0005 (Pl. Dep. at 29). After his return, Thompson

complained that he did not want to work on the Third Shift, and he was transferred to the First

Shift. See id. at A0008 (Pl. Dep. at 38-39). Steve Homlish was the First Shift Supervisor. See

id. at A0009 (Pl. Dep. at 44).

### C.    Thompson Continued to Work as a Maintenance Mechanic I and Did Not Apply for a Promotion In 2004.

In March 2004, the Second Shift Supervisor position became available. Pursuant to the

Employee Handbook, Dover Downs posted this job opening internally. See id. at A0041-A0042

(Shreves Dep. at 9-10); A0060 (Employee Handbook, Section 2.06). Dover Downs employees

had five days in which to apply for the position. See id. Although Thompson learned of this

position during the five-day posting period, he did not apply. See id. at A0011 (Pl. Dep. at 74-

75).[4] James Shreves applied, interviewed, and received the position. See id. at A0041-A0042

(Shreves Dep. at 9-10, 12).

---

[3] Robert Morrison, the Second Shift Supervisor, was the supervisor for Gorlich and Whitecomb while
they worked on the Third Shift, and both employees reported to Morrison. See Def.'s App. at A0027
(Gorlich Dep. at 11); A0044 (Whitecomb Dep. at 13).

[4] According to Thompson, the only promotions for which he applied were in 2001. These alleged
promotions are time-barred under the applicable statute of limitations. See, infra, Section IV.A.1.
Thompson also contends that he applied for a Maintenance Mechanic II position sometime in 2004, but
he withdrew his application for that position. See Def.'s App. at A0013 (Pl. Dep. at 84).

In June 2004, a Maintenance Mechanic I position in Outside Maintenance became available, and Thompson applied for that position. See id. at A0073 (Pl.'s Upgrade/Transfer Form). Since Thompson was already a Maintenance Mechanic I, this would have been – at best – a lateral move for Thompson. Maintenance Mechanics in the Outside group were expected to have expertise in a particular trade. Due to the possible departure of the Outside Maintenance plumber in 2004, management considered it essential that the person hired for this position be a plumber. See id. at A0036 (Morrison Dep. at 43). Robert Morrison was the decision-maker for the selection of this position. See id. Although Thompson had some experience in "light plumbing," such as fixing a leak in the sink or toilet, he was never a plumber. See id. at A0002 (Pl. Dep. at 8-9); A0034-A0035 (Morrison Dep. at 35-38); A0054-A0055 (Pl.'s Job Application). Therefore, Morrison did not pick Thompson for the position. See id. at A0034 (Morrison Dep. at 35). Having rejected Thompson, Dover Downs expanded its search for an external candidate, and hired Robert Knotts for the job. See id. at A0035 (Morrison Dep. at 38-39). Knotts had more than 20 years of experience in the plumbing trade. In fact, he had worked for several Dover-area plumbing contractors and had done little other than plumbing in his working career. See id. at A0035, A0037 (Morrison Dep. at 39-41, 55); A0031 (Knotts Dep. at 12); A0074-A0078 (Job Application of R. Knotts). Knotts was clearly qualified for the job, and Thompson – the painter – was not.[5]

---

[5] Morrison was "looking for experience in the [plumbing] field" because he needed someone who could come into the plumbing position and immediately perform the job responsibilities. See Def.'s App. at A0036 (Morrison Dep. at 42-43). Morrison overlooked the fact that Knotts did not have the requisite high school degree, as he was focused on Knotts's extensive experience in the field. With Knotts's skills and experience, Morrison knew that he could come into the plumbing position and "get the job done." See id.

D.     **Thompson Was Absent and Tardy During 2004.**

As set forth in the Dover Downs Employee Handbook, each unexcused absence by an employee is an "occurrence." See id. at A0061-A0062 (Employee Handbook, Section 6.04).  An illness is excused – and therefore not an "occurrence" – only if an employee has accrued sick time and submits a doctor's note. See id.  The Handbook sets forth the progressive discipline system and provides that an employee is permitted three occurrences before a documented Warning is issued and placed in the employee's personnel file. See id.  Although a supervisor may make a note of an employee's first three occurrences, no documentation is placed in the employee's personnel file. See id.  Upon the fourth occurrence, the employee receives a Verbal Warning, which is placed in the employee's personnel file. See id.  The next occurrence results in a Written Warning, which is placed in the employee's personnel file. See id.  The sixth occurrence results in a Final Written Warning and/or a suspension up to three days. See id.  An employee does not receive a bonus if he receives a Final Written Warning during the bonus year. See id. at A0051 (Declaration of Robin Roberts).  If there is a seventh occurrence during a rolling 12-month period, the employee is terminated. See id. at A0061-A0062 (Employee Handbook, Section 6.04).

Thompson had an unexcused absence from work on February 3, 2004.  Homlish noted this occurrence on a form entitled "Disciplinary Warning Notice Coaching," and he retained that form in the Maintenance Department file. See id. at A0064 (Coaching regarding February 3, 2004).  Thompson had two other unexcused absences – or occurrences – that resulted in Coachings over the next six months. See id. at A0065-A0066 (Coachings regarding June 16, 2004 and August 16, 2004 incidents).  These Coachings, like the first Coaching, were placed in

Thompson's Maintenance Department file, but not in his personnel file kept in the Human

Resources Department. See id. at A0029 (Isenberg Dep. at 22-23).[6]

In November 2004, Thompson had his fourth unexcused absence, and in accordance with

the Employee Handbook, he received a Verbal Warning. See id. at A0067 (Verbal Warning

regarding November 17, 2004 incident). The Verbal Warning, which Thompson signed, noted

the previous three occurrences. See id. Thompson continued to have unexcused absences, and

was issued a Written Warning on January 4, 2005 and a Final Written Warning on January 12,

2005. See id. at A0069 (Written Warning regarding December 29, 2004 incident); A0071 (Final

Written Warning regarding January 12, 2005 incident). The Final Written Warning stated that

"this is the sixth incident of illness without a doctor's excuse or accrued sick time." Id.

Thompson admitted, at his deposition, that this statement was accurate. See id. at A0018 (Pl.

Dep. at 161). Because of the Final Written Warning, Thompson did not receive a bonus in

February 2005.[7]

### E.  Although He Had Not Applied for a Promotion in 2004, Thompson Filed a Charge of Discrimination, In Which He Alleged that Dover Downs Had Denied Him a Promotion Because of His Age.

In September 2005, Thompson filed a Charge of Discrimination with the Delaware

Department of Labor and U.S. Equal Employment Opportunity Commission, claiming that he

was denied two "promotions." See id. at A0078 (Pl.'s Charge of Discrimination). When

questioned at his deposition about this Charge, Thompson stated that the first alleged promotion

---

[6] With the exception of these Coachings, Thompson believes that Homlish treated him fairly throughout his employment. See id. at A0010 (Pl. Dep. at 46).

[7] This was an error because Thompson's Final Written Warning was in January 2005. Since Thompson did not have a Final Written Warning during 2004, he should have received a bonus for the year 2004 in February 2005. When Dover Downs recognized this error, it paid Thompson the 2004 bonus with interest. See Def.'s App. at A0051-A0052 (Roberts Decl. ¶ 2).

was the Shift Supervisor position in March 2004 – for which he did not apply – and the second

alleged "promotion" was the Outside Maintenance Mechanic I position in June 2004 – which

was not a promotion.  See id. at A0019 (Pl. Dep. at 172-73).   Thompson filed a second Charge

of Discrimination in January 2005, claiming that his Disciplinary Warning Notices were

retaliatory for his initial Charge.  See id. at A0080 (Pl.'s Second Charge of Discrimination).

In March 2005, Thompson went out on workers' compensation and never returned to

work at Dover Downs.  Although his doctors released Thompson for light duty at certain times

over the past year, the restrictions were so tight that Dover Downs was unable to place him in a

light duty job.  See id. at A0016 (Pl. Dep. at 105); A0047-A0048 (Declaration of Fred Downs).

In one of his reports, Thompson's doctor noted that Thompson would not be able "to return to

his previous job now or into the future."  See id. at A0083-A0086 (Letter from Alan J. Fink,

M.D. dated November 14, 2005) (emphasis added).

On May 6, 2005, Thompson filed his Complaint with this Court.

## V.    ARGUMENT: THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DOVER DOWNS ON ALL COUNTS BECAUSE THERE IS NO DISPUTE OF MATERIAL FACT AND DOVER DOWNS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

A court should grant summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issues of material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c).  Once the moving party demonstrates an absence of material fact,

the nonmoving party – in order to avoid summary judgment – must then establish the existence

of each element on his claims for which he has the burden of proof.  Saldana v. Kmart Corp., 260

F.3d 228, 231-32 (3d Cir. 2001).  The nonmoving party cannot avert summary judgment with

mere speculation or allegations, but rather, must present enough competent evidence from which

a jury could reasonably find in its favor. Id. If the nonmoving party fails to make a sufficient

showing on an essential element, the moving party is entitled to judgment as a matter of law. Id.

This Court should grant summary judgment in favor of Dover Downs because Thompson

is unable to make a sufficient showing on the essential elements of his claims and there is not

enough evidence to enable a jury reasonably to find for Thompson on any of his claims.

**A.      Dover Downs Is Entitled To Summary Judgment On Thompson's
Claim of Age Discrimination (Counts I & V).**

A plaintiff's age discrimination claim under the ADEA is governed by the burden-

shifting paradigm of McDonnell-Douglas and its progeny. To establish such a claim, a plaintiff

must first make out a prima facie case of discrimination by proving that: (1) he is a member of

the protected class, i.e., at least 40 years of age; (2) he is qualified for the position; (3) he

suffered an adverse employment action; and (4) he was replaced by a sufficiently younger person

to create an inference of age discrimination or non-members of the protected class were treated

more favorably. Keller v. Orvix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997).[8]

Once a plaintiff establishes a prima facie case of discrimination, the burden of production

shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. See

Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The plaintiff then has an opportunity to

point to some evidence to show that the defendant's articulated reason is a pretext for

discrimination. See id. at 764-65. In order to discredit the defendant's proffered reason, the

plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered reason that a reasonable factfinder could either

---

[8] This same analysis applies to a plaintiff's age discrimination claim under § 711. Nat'l Cash Register v. Riner, 424 A.2d 669, 672 (Del. Super. Ct. 1980).

disbelieve the reason or believe that discrimination was more likely than not the reason for the employer's action. See id.

In this case, Thompson claims that Dover Downs discriminated against him by denying him a promotion and by not providing him with the choice of returning to work on light duty. As set forth below, neither of these claims can survive summary judgment.

### 1.  Denial of a "Promotion"

#### a.    Shift Supervisor Position in 2001

First, Thompson claims that he was denied a promotion to a Shift Supervisor position over four years ago, in 2001.

It is well settled that as a condition precedent to filing suit under the ADEA, a plaintiff must first file charges with the administrative agency within 300 days of the alleged discriminatory act. See Amtrak v. Morgan, 563 U.S. 101, 121 (2002); Bailey v. United Airlines, 279 F.3d 194, 197 (3d Cir. 2002); Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000); 29 U.S.C. § 626(d)(2); see also 19 Del. C. § 712 (stating that person must "file a charge of discrimination within 120 days of the alleged unlawful employment practice or its discovery").

Thompson's Charge of Discrimination did not assert any promotion denial from 2001. Instead, the two "promotions" at issue in Thompson's Charge were from 2004. See Def.'s App. at A0019 (Pl. Dep. at 172-73). Thus, Thompson failed to exhaust his administrative remedies with respect to any 2001 position. Moreover, since the alleged promotion denials occurred in 2001 – and approximately three years prior to Thompson's Charge of Discrimination – Thompson's claim cannot succeed because it is well beyond the 300-day statute of limitations, and therefore, it is time-barred.

b.    Shift Supervisor Position in March 2004

Thompson claims that he was denied a promotion to a Shift Supervisor position in March 2004. Thompson himself admits, however, that he never applied for this position. See Def.'s App. at A0011 (Pl. Dep. at 74-75). Accordingly, Thompson cannot even prove the most basic element of his claim – that he applied for the position – and his claim must be dismissed.

c.    Maintenance Mechanic I Position in June 2004

Lastly, Thompson claims that he was denied a "promotion" to a Maintenance Mechanic I position in Outside Maintenance in June 2004.

Thompson, however, was already a Maintenance Mechanic I in June 2004, and a move to another Maintenance Mechanic I position would have been a lateral transfer – and not a promotion for Thompson.[9] Denial of a lateral move, such as this, does not rise to the level of an adverse employment action. See, e.g., Scott v. State of N.J., 143 Fed. App'x 443, 446 (3d Cir. 2005) ("[A] purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.") (quotation and internal marks omitted); Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999) (same). Without an adverse employment action, Thompson cannot prove the necessary elements of his discrimination claim.

Additionally, Thompson's claim also fails because there is no evidence to suggest that age played any role in Thompson not receiving the Outside Maintenance Mechanic I position. Thompson testified that he never heard the decision-maker, Robert Morrison, make any age-related comments, and Thompson further testified that Morrison treated him fairly at all times

---

[9] The pay scale for an Outside Maintenance Mechanic I is the same as the pay scale for an Inside Maintenance Mechanic I, and the salary depends upon the employee's background and experience. See Def.'s App. at A0050 (Isenberg Decl. ¶ 2).

while he worked under Morrison's supervision. See Def.'s App. at A0009, A0020 (Pl. Dep. at

44-45, 174-76).[10]  Instead, Thompson believes that it was age discrimination merely because a

younger individual received the job. See id. at A0019 (Pl. Dep. at 172-73).  The fact that the

plaintiff is older than the selected candidate is not sufficient to establish a prima facie case of age

discrimination. See, e.g., Sarko v. Henderson, Civ. No. 03-CV-3473, 2004 U.S. Dist. LEXIS

22194, at *9 (E.D. Pa. Oct. 29, 2004) (granting summary judgment in defendant's favor on

ADEA claim because, inter alia, plaintiff's "evidence of age discrimination consist[ed] solely on

his assertion that he was replaced by younger persons").[11]

Dover Downs' need for a Maintenance Mechanic I with substantial plumbing experience

refutes any claim Thompson might have to the Outside Maintenance position.  As the only

witness on this point – Robert Morrison – testified, the Outside Maintenance department

desperately needed a plumber because the only plumber in the department was thinking about

leaving. See Def.'s App. at A0036 (Morrison Dep. 43-44).  It is undisputed that Thompson

never had a job as a plumber and that Knotts had more than 20 years of experience in the trade.

Dover Downs had the right to make a business decision as to whether a candidate's background

was sufficient for the job, and there is no evidence to suggest that age discrimination played any

role in that business decision. See, e.g., Keller v. Orvix Credit Alliance, 130 F.3d 1101, 1109

---

[10] According to Thompson, Morrison made a comment that Thompson thinks "implied" age
discrimination. See Def.'s App. at A0014 (Pl. Dep. 95-96).  Specifically, Thompson testified that
Morrison told him that "the weather was hot and [the job] was heavy work." Id. at A0014 (Pl. Dep. at
95).  As Thompson himself acknowledged, these words accurately described the job conditions of the
Outside Maintenance position, see id. at A0014 (Pl. Dep. at 96), and it is undisputed that Morrison
informed both candidates – Thompson and Knotts – of these job conditions in essentially the same terms.
See id. A0031 (Knotts Dep. at 11-12).  It is inconceivable, under these circumstances, that a reasonable
person would construe Morrison's comment as age-related.

[11] In fact, Thompson's own testimony refutes a finding that age discrimination was a determinative factor.
Knotts was the brother-in-law of a Dover Downs employee, and Thompson contends that that relationship
"had a lot to do" with Knotts being selected for the position. See Def.'s App. at A0015 (Pl. Dep. at 99).

(3d Cir. 1997) ("The question is not whether [Defendant] made the best, or even a sound, business decision; it is whether the real reason is discrimination.") (citation omitted); <u>Dungee v. Northeast Foods, Inc.</u>, 940 F. Supp. 682, 689 (D.N.J. 1996) ("In sum, plaintiff's assertions that she was more qualified amount to nothing more than an attempt to displace the defendants' business judgment with her own, and is thus insufficient to overcome summary judgment."). Accordingly, Dover Downs had a legitimate, non-discriminatory reason for its selection – which Thompson is unable to rebut.

For these reasons, Thompson cannot establish a cognizable claim of age discrimination based on Morrison's refusal to accept him as a lateral hire as an Outside Maintenance plumber.

**2.      Light Duty Assignment**

Thompson also contends that Dover Downs discriminated against him by not providing him with a light duty assignment while he was out on workers compensation. This claim fails because (1) Thompson did not exhaust his administrative remedies and (2) there is no merit to Thompson's claim.

a.      Thompson failed to exhaust his administrative remedies.

As stated above, a plaintiff is required to exhaust his administrative remedies prior to filing an age discrimination claim under the ADEA and § 711. There is a limited exception to the exhaustion requirement in certain circumstances, however, and the Third Circuit has held that the relevant test in determining whether a plaintiff is required to exhaust his administrative remedies "is whether the acts alleged in the subsequent . . . suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." <u>Waiters v. Parsons</u>, 729 F.2d 233, 237 (3d Cir. 1984). Obviously, "claims involving instances of discrimination that arise after the completion of the EEOC investigation do not fall within the scope of the agency's investigation." <u>Allen v. AMTRAK</u>, Civ. No. 03-CV-3497, 2005 U.S. Dist. LEXIS 19624, at *31

(E.D. Pa. Sept. 6, 2005); see also Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (concluding that plaintiff must file new EEOC charge as to acts that occur after date of agency charge and that failure to file new charge may render claim time-barred); Crumpton v. Potter, 305 F. Supp. 2d 465, 475-76 (E.D. Pa. 2004) ("Because Crumpton's denial of overtime occurred [after the charge], it could not have been within the scope of the agency's investigation. Crumpton, therefore, has not exhausted his administrative remedies with respect to this alleged retaliatory incident and I decline to address its merits.").

In this case, Thompson never alleged at the agency level that Dover Downs discriminated against him by not providing him with a light duty assignment. In fact, Thompson's Charges of Discrimination had already been dismissed at the time Thompson went out on workers' compensation. See Def.'s App. at A0096 (Compl. ¶ 50); A0079, A0081 (Agency Dismissals). Therefore, it is inconceivable that this claim was "within the scope of [his prior charges], or the investigation arising therefrom." Accordingly, based on the well-established case law cited above, this Court should dismiss Thompson's claim, as he failed to exhaust his administrative remedies.

b.    Thompson's claim has no merit.

Even if Thompson's claim were not barred, it still could not succeed because it has no merit. In an attempt to prove his age discrimination claim, Thompson argues that Dover Downs treated another employee, Eric Daniel, more favorably than it treated him. Specifically, Thompson alleges that Dover Downs allowed Daniel to return to work on light duty while he was out on workers' compensation. Daniel, however, did not have the same limiting restrictions

as Thompson.[12]  Indeed, Thompson was limited to lifting no more than 10 pounds and was

prohibited from any use of his arms above his head.   See Def.'s App. at A0082 (Report dated

March 30, 2005).  Thompson concedes that he could not perform the duties of a Maintenance

Mechanic I with his restrictions.  See id. at A0016 (Pl. Dep. at 105).  Thompson further admits

that – unlike Daniel – his doctors never released him to return to work on regular duty, and

consequently, Thompson acknowledged that Daniel's situation was "different" than his situation.

See id. at A0022 (Pl. Dep. at 196).  Moreover, according to his doctor's report, Thompson would

never be able to return to work as a Maintenance Mechanic at any time in future – unlike Daniel.

See id. at A0083-A0086 (Letter from Alan J. Fink, M.D. dated November 14, 2005).

        Consequently, even by Thompson's own account, Daniel is not situated similarly to

Thompson, and Thompson has produced no evidence to suggest age discrimination.

Accordingly, Thompson cannot succeed on his claim, and the Court should find in favor of

Dover Downs as a matter law on Counts I and V of Thompson's Complaint.

### B.        Dover Downs Is Entitled To Summary Judgment On Thompson's Claim of Retaliation (Count II).

        To establish a prima facie case of retaliation under the ADEA, a plaintiff must show that:

(1) he engaged in a protected activity; (2) the employer took an adverse employment action after

or contemporaneous with the protected activity; and (3) a causal link exists between the

protected activity and the adverse employment action.  Weston v. Pennsylvania, 251 F.3d 420,

430 (3d Cir. 2001).  Whether the plaintiff has established a prima facie case of retaliation is a

question of law.  Baker v. Wilmington Trust Co., 320 F. Supp.2d 196, 200 (D. Del. 2004).

---

[12] In fact, Daniel was never assigned to light duty work.  Instead, his doctor released him to regular duty
with the recommendation that he be assisted with weight over 25 pounds.  See Def.'s App. at A0047-
A0048 (Downs Decl. ¶ 2); A0045-A0046 (Daniel Decl. ¶ 2).

In this case, Thompson alleges that the following acts were retaliatory for his Charge of Discrimination: (1) his Disciplinary Warning Notices; (2) the initial denial of a bonus; (3) an increased workload; (4) the refusal to transport him to the hospital; and (5) the placement of a camera in the paint shop.  Like his discrimination claim, Thompson's retaliation claim cannot survive summary judgment.

    1. <u>Disciplinary Warning Notices.</u>

Thompson contends that his Disciplinary Warning Notices during 2004 were retaliatory. This claim fails for several reasons.

First, Thompson received the Disciplinary Warning Notices because he had unexcused absences, and he does not contest that he was absent on the days Dover Downs recorded him as absent.  As set forth in the Concise Statement of Facts, the first three absences result in nothing more than a notation in the employee's departmental record.  On his <u>sixth</u> unexcused absence in January 2005, Thompson received a Final Written Warning.  The Warning specifically stated that "this [was] the sixth incident of illness without a doctor's excuse or accrued sick time."  <u>See</u> Def.'s App. at A0071 (Final Written Warning).  Because Thompson admits that this statement was accurate, <u>see</u> <u>id.</u> at A0018 (Pl. Dep. at 161), no reasonable jury could conclude that the Disciplinary Warning Notices were in retaliation for Thompson's Charge of Discrimination.[13]

Second, Thompson suffered no negative consequences as a result of the Disciplinary Warning Notices.  The Notices did not alter Thompson's job position, title, or salary.  They also did not cause him to miss any promotional opportunities or otherwise impede his professional

---

[13] Thompson contends that he should have been able to use his vacation time for the days he was absent from work.  Thompson never asked to use his vacation time for these days, and Thompson is not even sure if he had enough vacation time accrued to cover his unexcused absences.  <u>See</u> Def.'s App. at A0017 (Pl. Dep. at 148).

advancement. Consequently, the Disciplinary Warning Notices did not affect a "significant change in [Thompson's] employment status" and are not adverse employment actions. <u>See</u> <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 431 (3d Cir. 2001) ("[Plaintiff] failed to establish how . . . two [written] reprimands effect a material change in the terms or conditions of his employment. We cannot, therefore, characterize them as adverse employment actions."); <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1301 (3d Cir. 1997) ("We hold that [plaintiff's] allegations that she was subjected to 'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' following her complaint do not rise to the level of the 'adverse employment action' required for a retaliation claim.").

Third and finally, Thompson offers no evidence that the Disciplinary Warning Notices were the product of a retaliatory animus. Instead, the undisputed evidence shows that Thompson had <u>six</u> unexcused absences, and that Dover Downs, therefore, had a legitimate, nonretaliatory reason for the Notices.

Accordingly, Dover Downs is entitled to summary judgment on this aspect of Thompson's retaliation claim.

      2.   <u>Bonus</u>

Thompson also attempts to base his retaliation claim on the bonus payment from February 2005. Dover Downs initially did not provide Thompson with this bonus because he was on a Final Written Warning. Thompson's Final Written Warning occurred in January 2005, however, and he was not on a Final Written Warning at any time during 2004. Therefore, in accordance with Dover Downs' practice, Thompson should have received a bonus for the year 2004 in February 2005. <u>See</u> Def.'s App. at A0051-A0052 (Roberts Decl. ¶ 3). The initial failure

to provide Thompson with a bonus was an administrative error, and Dover Downs has since rectified this mistake. See id.

In light of the fact that he received the bonus, Thompson has suffered no adverse employment action. See Urban v. Henderson, Civil No. 99-4244, 2001 U.S. Dist. LEXIS 5531, at *11 (E.D. Pa. Apr. 5, 2001) ("Since the plaintiff was eventually paid the 1996 EVA bonus with interest to compensate him for the delay in receiving the bonus, he suffered no injury. As such, he cannot make a prima facie case."); see also Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998) ("[W]hen an employee loses pay or an employment benefits from a delayed promotion, courts have held that the employment action is not adverse only when the action is rescinded and backpay is awarded."); Crumpton v. Potter, 305 F. Supp.2d 465, 475 (E.D. Pa. 2004) (concluding that employee did not suffer "adverse employment action" because "he was given back-pay"). Moreover, the bonus payment of $309 – which was only a minuscule fraction of his annual salary (1%) – is not large enough to be a "significant change" in his employment and therefore does not rise to the level of an adverse employment action. See, e.g., EEOC v. Wyeth Pharm., Civ. No. 03-2967, 2004 U.S. Dist. LEXIS 4382, at *7 n.3 (E.D. Pa. Mar. 11, 2004) ("[T]he Court does not find that a minuscule decline (.05%) in pay increase amounts to an adverse employment action.").

With respect to the question of retaliatory motive, Dover Downs had a legitimate, nonretaliatory reason for the initial denial of Thompson's bonus, and Thompson has no evidence to rebut this reason. Once Dover Downs learned of its error, it corrected it. See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit an employer's proffered reason, . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the

factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.").

3.     Workload

Thompson also claims that Dover Downs retaliated against him by increasing his workload. Specifically, Thompson contends that he "had more painting to do" and "more work orders to complete." See Def.'s App. at A0022 (Pl. Dep. at 197). Thompson admitted, however, that his employment was not affected because of these assignments. See id. Accordingly, even if his allegation were true, Thompson has not alleged an adverse employment action, and his claim cannot survive. See, e.g., Galabaya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) ("To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.") (quotation and internal marks omitted); Benningfield v. City of Houston, 157 F.3d 369, 376-77 (5th Cir. 1998) (finding that plaintiff's claim that "she was assigned an unusually heavy work load" was not an adverse employment action).

4.     Transportation to Hospital

Next, Thompson argues that Dover Downs prohibited co-worker Linda Renninger from transporting him to the hospital when he was ill in January 2005. The undisputed evidence refutes Thompson's contention that this was an event of retaliation.

Renninger testified that no one at Dover Downs instructed her as to whether she could drive Thompson to the hospital. See Def.'s App. at A0039 (Renninger Dep. at 9). Renninger further stated that she offered to take Thompson to the hospital only after he had refused the suggestion of Dover Downs' security personnel to call an ambulance. See id. at A0039 (Renninger Dep. at 7-8). Renninger subsequently changed her mind, and she alone made the decision not to transport Thompson to the hospital. See id. at A0039 (Renninger Dep. at 8).

Even if Thompson's allegation were true, it would not have resulted in a significant change in Thompson's employment status, and therefore, Thompson – once again – cannot establish the requisite adverse employment action for a cognizable claim of retaliation. <u>See</u> <u>Robinson</u>, 120 F.3d at 1300-01 (holding that alleged act must be serious enough to alter employee's compensation, terms, conditions, or privileges of employment in order to constitute an adverse employment action, and stating that "otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a [retaliation] suit") (quotation and internal marks omitted).

5.    <u>Camera in Paint Shop</u>

Lastly, Thompson claims that Dover Downs placed a hidden surveillance camera in the paint shop where he kept his paint supplies in retaliation for his Charge of Discrimination.  Once again, this is not an adverse employment action, and Thompson cannot establish a prima facie case of retaliation.

Moreover, Dover Downs had a legitimate, nonretaliatory reason for placing the camera in the paint shop.  The undisputed evidence shows that Thompson had previously complained to his manager that someone was stealing or tampering with his paint supplies.  <u>See</u> Def.'s App. at A0021 (Pl. Dep. at 183).  As part of the investigation into Thompson's complaint, Dover Downs placed a hidden camera in the paint shop in the hope that the camera would reveal which individual, if any, was stealing or tampering with Thompson's paint supplies.  <u>See</u> <u>id.</u> at A0049 (Declaration of Richard Duncan); A0053 (Declaration of Richard Wertz).  This investigation was not fruitful.  <u>See</u> <u>id.</u>

For the foregoing reasons, Thompson's retaliation claim cannot withstand summary judgment.[14]

**C.      Thompson Cannot Succeed on his Claim of Breach of Covenant of Good Faith and Fair Dealing (Count III).**

Thompson alleges a breach of the covenant of good faith and fair dealing in Count III of his Complaint.  Because summary judgment is proper with respect to Thompson's federal claims, the Court should dismiss this state law claim for lack of jurisdiction.  See 28 U.S.C. § 1367(c) (authorizing court to dismiss supplemental state law claims if all claims over which it has original jurisdiction have been dismissed); see also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("When the federal claims are dismissed prior to trial, the district court "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").  Accordingly, the Court should dismiss Count III of Thompson's Complaint.

Even if this Court were to exercise jurisdiction, it should still dismiss Thompson's breach of covenant of good faith and fair dealing claim because the claim is without merit.  In Merrill v. Crothall-American, Inc., 606 A.2d 96 (Del. 1992), the Delaware Supreme Court held that there is a limited implied covenant of good faith and fair dealing in connection with at-will employment contracts.  Specifically, the court stated: "To constitute a breach of the implied covenant of good faith, the conduct of the employer must constitute an aspect of fraud, deceit or misrepresentation."  Id. at 101 (quotation and internal marks omitted).

---

[14] Additionally, some of Thompson's alleged claims were never raised at the agency level, and therefore, the following claims also must be dismissed based on Thompson's failure to exhaust administrative remedies:  (1) the denial of a bonus; (2) the increase in his workload; (3) the refusal to take him to the hospital; and (4) the placement of a camera in the paint shop.  See, supra, Section V.A.2.a.

Thompson claims that Dover Downs breached the covenant by scrutinizing his "job-related activities unfairly and as a result, he incurred many more disciplinary write-ups than other similarly situated employees." See Def.'s App. at A0099 (Compl. ¶ 68). This allegation, even if true, does not meet the standard for a cognizable claim, as Thompson himself admitted that he had six "occurrences" of absence without a doctor's excuse or accrued sick time. See id. at A0018 (Pl. Dep. at 161). Thus, it is undisputed that Thompson's Final Written Warning was in accordance with the Employee Handbook.

Moreover, Thompson's argument that similarly situated employees were treated more favorably falls hopelessly short, as there is no employee who had six unexcused absences and did not receive a Final Written Warning. In any event, Thompson suffered no damages arising out of his absences, as the Disciplinary Warning Notices had no impact on his employment terms or conditions. Dover Downs did not terminate him because of his absenteeism. Accordingly, the Court should dismiss Thompson's claim that Dover Downs breached its covenant of good faith and fair dealing, as alleged in Count III of the Complaint.

### D.    Thompson Cannot Succeed on his Failure to Promote Claim (Count VI).

Thompson alleges a failure to promote claim in the sixth and final Count of his Complaint. It appears that Thompson asserts this claim under the ADEA and § 711, and therefore, the Court should enter judgment in favor of Dover Downs and against Thompson on Count VI of the Complaint for the reasons discussed supra, in Section V.A.1.

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant Dover Down, Inc. requests that the Court enter summary judgment in its favor and against Plaintiff Brance F. Thompson on all counts of the Complaint.

Respectfully submitted,

Dated: April 28, 2006

_____*/s/ Richard M. Donaldson*_____
Noel C. Burnham (DE Bar No. 3483)
Richard M. Donaldson (DE Bar No. 4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE  19801
(302) 504-7840

*Counsel for Defendant Dover Downs, Inc.*

Of Counsel:

Edward T. Ellis
Montgomery, McCracken,
   Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

## CERTIFICATE OF SERVICE

This is to certify that two (2) copies of the Opening Brief in Support of Defendant's Motion For Summary Judgment were served by electronic filing and hand-delivery this 28th day of April 2006 on:

> Timothy J. Wilson, Esquire
> Margolis Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE  19806
>
> *Counsel for Plaintiff*

_____ */s/ Richard M. Donaldson*_____
Richard M. Donaldson (DE Bar No. 4367)