IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRANCE F. THOMPSON, SR., | : | |
| Plaintiff, | : | Civil Action No.: 05-274 |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| DOVER DOWNS, INC., DOVER DOWNS GAMING & ENTERTAINMENT INC., DOVER DOWNS GAMING MANAGEMENT CORP., DOVER ENTERPRISES, INC., and DOVER DOWNS PROPERTIES, INC., | : | |
| Defendants. | : | |

### COMPLAINT

### PARTIES

1. Plaintiff, Brance F. Thompson, Sr. (hereinafter "Plaintiff" or "Mr. Thompson"), is a resident of the State of Delaware, and at all times relevant to this Complaint resided at 1679 South State Street, Lot 72, Dover, DE 19901.

2. Defendant, Dover Downs, Inc., is a Delaware corporation doing business in the State of Delaware that is subject to service through its registered agent, Klaus M. Belohoubek, 3505 Silverside Road Plaza, Centre Building, Suite 203, Wilmington, DE 19810.

3. Defendant Dover Downs Gaming & Entertainment Inc., is a Delaware corporation doing business in the State of Delaware that is subject to service through its registered agent, Klaus M. Belohoubek, 3505 Silverside Road Plaza, Centre Building, Suite 203, Wilmington, DE 19810.

4. Defendant Dover Downs Gaming Management Corp., is a Delaware corporation doing business in the State of Delaware that is subject to service through its registered agent, Klaus M. Belohoubek, 3505 Silverside Road Plaza, Centre Building, Suite 203, Wilmington, DE 19810.

5. Defendant Dover Downs Enterprises, Inc., is a Delaware corporation doing business in the State of Delaware that is subject to service through its registered agent, Klaus M. Belohoubek, 3505 Silverside Road Plaza, Centre Building, Suite 203, Wilmington, DE 19810.

6. Defendant Dover Downs Properties, Inc., is a Delaware corporation doing business in the State of Delaware that is subject to service through its registered agent, Klaus M. Belohoubek, 3505 Silverside Road Plaza, Centre Building, Suite 203, Wilmington, DE 19810.

7. Defendants are hereinafter collectively referred to as "Defendants" or "Dover Downs."

## JURISDICTION

8. The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights secured by federal laws which prohibit discrimination against employees on the basis of age, in the terms, conditions, and privileges of employment and which prohibit retaliation against an employee for exercising such rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"), the Age Discrimination in Employment Act (hereinafter "ADEA" or "the Act"), 29 U.S.C. § 621 *et seq.*, and to secure protection and redress deprivation of similar rights secured by 19 Del. C. § 711, and is founded on the existence of a federal question

arising under 28 U.S.C. Sections 1331 and 1343(4). An additional jurisdictional basis for Plaintiff's state law claims exists under the principles of pendant and supplemental jurisdiction and 28 U.S.C. § 1367.

9. Plaintiff exhausted all administrative remedies before bringing this action, and received a Right to Sue letter issued by the Delaware Department of Labor on March 3, 2005.

## FACTUAL BACKGROUND

### Discrimination

10. Mr. Thompson is presently sixty-four (64) years old.

11. He began his employment with Dover Downs on April 23, 2001, when he was hired by Dover Downs Maintenance Manager, Richard Duncan ("Mr. Duncan"), as a Maintenance Mechanic 1.

12. A Maintenance Mechanic 1 is the highest level of the maintenance mechanics employed by Dover Downs among its maintenance employees who work indoors. Any promotion from Maintenance Mechanic 1 would necessarily be to a supervisory position or to a maintenance position working outdoors.

13. The first year that Mr. Thompson worked at Dover Downs, he worked on Second Shift[1] under the Supervision of Bob Morrison. Following that first year, Mr. Thompson was moved to Third Shift[2] with no supervision. There were also other employees, Nate Whitecomb and Kevin Gorlick, who worked on Third Shift under Mr. Thompson's supervision. His primary responsibility on Third Shift was performing faux

---

[1] Second Shift is typically 3:00 p.m. to 11:30 p.m.
[2] Third Shift is typically 11:00 p.m. to 7 a.m.

painting[3] and other painting applications at Dover Downs.

14. On September 9, 2002, Mr. Thompson was in a horrific automobile accident. The injuries that he sustained in the accident included a broken back, tailbone, cheekbone, and foot. He also required surgery to fuse two vertebrae in his neck. Mr. Thompson missed approximately one year of work due to the extent of his injuries and the treatment thereof.

15. Mr. Thompson returned to work on or about September 15, 2003 on light duty in the security office, distributing radios to security guards. He remained on light duty for approximately two months before he returned to his job as a Maintenance Mechanic 1 doing faux painting on Third Shift. At that time, he was working with two other individuals, Nate Whitecomb and Kevin Gorlick, on Third Shift.

16. Mr. Thompson's acting supervisor at that time was Bob Morrison ("Mr. Morrison") – although Mr. Morrison worked Second Shift. Essentially, Mr. Thompson performed all of the functions and duties of a Third Shift Supervisor.

17. Shortly thereafter, on or about October 19, 2001, a job posting was released for a Third Shift Supervisor. Mr. Thompson applied for that position.

18. Upon information and belief, Mr. Thompson was the only individual who applied for the Third Shift Supervisor's position.

19. Mr. Thompson was not awarded the position. Mr. Duncan explained that he did not get the job because Mr. Duncan had come to realize that he did not need a Third Shift Supervisor. Not coincidentally, at this time, Mr. Thompson was performing the duties of the Third Shift Supervisor and had two other employees working under his

---

[3] Faux Painting is a method of painting in which walls and other structures are painted to look like they are made of marble, granite and other similar materials.

direction.

20.  Approximately two to four months later, Dover Downs promoted Al Baldwin, a Maintenance Mechanic 1 who had previously been working on the First Shift, to the Third Shift Supervisor position. When the opening for Third Shift Supervisor was posted, Mr. Baldwin did not apply for the opening. Instead, Mr. Duncan approached Mr. Baldwin and asked him if he wanted the job.

21.  Upon information and belief, Mr. Baldwin was thirty-nine years old at the time of his promotion.

22.  Mr. Thompson, who, until that time had been the *de facto* Third Shift Supervisor, was then transferred to First Shift.

23.  On or about March 4, 2004 a job opening for Second Shift[4] Supervisor was posted.

24.  Upon information and belief, the job posting was taken down that same day, in violation § 2.06 of the Dover Downs Employee Handbook (hereinafter "Employee Handbook"). Section 2.06 requires: "Postings that are posted will be posted "in house" for at least 5 days." Upon information and belief, the five day rule was implemented so that everybody who works in the Maintenance Department would have an opportunity to see the posting and to bid on the job if interested – regardless of the time of week in which their regularly scheduled days off fall.

25.  Mr. Thompson was not scheduled to work the day that the posting went up because it was a Thursday (his regularly scheduled day off). As a result, Mr. Thompson never saw the job posting and did not find out about it until March 12, 2004, when he heard about the job posting through another employee.

---

[4] Second Shift typically runs from 3:00 p.m. to 11:00 p.m.

26. On that date, Mr. Thompson approached Mr. Duncan and inquired about the job. Specifically, Mr. Thompson asked Mr. Duncan, if he applied for the position, would he be considered or if he would be wasting his time doing so. Mr. Duncan told him to put in for the job and find out.

27. Mr. Thompson did apply for the job, but upon information and belief, the position had already been awarded to Jim Shreves on March 4, 2004 – the day the job was posted.

28. Upon information and belief, Mr. Shreves was in his mid-thirties at that time. Mr. Thompson complained to Mr. Duncan about not getting the job, but he got no response.

29. On or about June 11, 2004, a job was posted for an Outside Maintenance Mechanic 1. The Outside Maintenance Mechanic 1 employees made more money than the "inside" Maintenance Mechanic employees. This posting was an "in house" posting, meaning that current employees who are qualified for the position are to be considered for the position before the company would look to the outside to fill the position.

30. Bob Morrison was the Outside Maintenance Manager and was in charge of hiring the Outside Maintenance Mechanic 1 to fill the opening.

31. Mr. Thompson approached Mr. Morrison to discuss the position. Mr. Morrison discouraged Mr. Thompson from bidding on the job and said that the Outside Maintenance Mechanic 1 position was "a hot, hard job and would involve a lot of heavy lifting." Mr. Thompson told him that he didn't care because he wanted the additional pay and because he wanted the change from his current position. In response, Mr. Morrison asked Mr. Thompson to not bid on the job so that he could hire a plumber to fill the

position. Mr. Morrison then assured Mr. Thompson that he would post another Outside Maintenance Mechanic 1 position and he would fill that position with Mr. Thompson.

32. When leaving the meeting with Mr. Morrison, Mr. Thompson was very happy about going "outside." On his way out of the building he ran into John McCarty and he and Mr. McCarty sat and talked about Mr. Thompson moving to Outside Maintenance.

33. Sometime in August 2004, Mr. Morrison hired Robert Knotts, then forty-three (43) years old, to fill the Outside Maintenance Mechanic 1 position. This individual was *not* a licensed plumber. Mr. Thompson approached Mr. Morrison to discuss the new hire and to inquire into when the new posting for Outside Maintenance Mechanic 1 would be posted.

34. Mr. Morrison told Mr. Thompson that he was not going to post another Outside Maintenance Mechanic 1 position and that Mr. Thompson was not "coming outside."

35. Mr. Thompson had reached his breaking point with respect to being passed over for promotions for younger, less qualified individuals. He asked for a meeting with Dover Downs Human Resources to discuss what he believed to be Dover Downs' age discrimination in hiring and promotion. On August 23, 2004, Mr. Thompson and Mr. Morrison met with Dover Downs Human Resources employee, Mrs. Eisenberg. During the meeting, Mr. Thompson accused Dover Downs of age discrimination. The meeting resolved nothing.

**Retaliation:**

36. The very next day after Mr. Thompson complained of age discrimination,

August 24, 2004, Mr. Thompson was informed that he had been written up for five separate instances that had occurred since February, 2004. All of these write up slips were dated August 24, 2004, even though the write ups were from various dates prior to August 24.

37. According to the well-established custom and work-practice at Dover Downs, an employee must be written up within seventy-two hours of the occurrence event. As a consequence, the August 24, 2004 write ups for the alleged previous violations were not in compliance with the Employee Handbook and therefore invalid.

38. When Mr. Thompson saw the dates on the documentation, he advised Mr. Duncan of this seventy-two hour rule.

39. In apparent agreement of the invalidity of the written disciplinary documentation, Mr. Duncan destroyed the original write up slips dated August 24, 2004 and reissued them. These new write up slips were back dated to the date that the alleged violations occurred. Significantly, within the box delineated "date signed" are the dates that the alleged events occurred. Mr. Homlish's signature appears beside the "date signed" box. Simply put, Mr. Duncan and Mr. Homlish falsified these documents to make them appear as if they were executed on the previous dates instead of on August 24, 2004.

40. Prior to August 24, 2004, Mr. Thompson had *never* been written up during the entire time he had worked at Dover Downs.

41. On or about August 24, 2004, with no other administrative remedy available to him, Plaintiff filed a Charge of Discrimination against Defendants with the

Delaware Department of Labor and the United States Equal Employment Opportunity Commission alleging age discrimination.

42. On January 4, 2005, Mr. Thompson was called into another meeting with Human Resources. In the four and a half months that had elapsed since August 24, 2004, Mr. Thompson had been written up numerous additional times. At the meeting, he was instructed that upon his next write up, he "*could*" be terminated; although, he was instructed further, Dover Downs did not "*want*" to execute such a termination. Mr. Thompson took this statement as a threat – meaning Dover Downs would not terminate him as long as he made no further complaints or trouble for them regarding age discrimination; but if he did continue to complain, they could and *would* terminate him.

43. In the eight months that have elapsed since that meeting, Mr. Thompson has been written up five additional times for various offenses. In all, Mr. Thompson was not written up a single time from 2001 until August of 2004. Since that date, he has been written up ten (10) times in the eight (8) months that have elapsed since he made his first formal complaint of age discrimination to his employer.

44. On or about January 10, 2005, Mr. Thompson found a hidden camera the size of a pencil in his paint shop. Disturbed by this, he intended to make it obvious to his employer that he knew that they had him under surveillance, so he went up to the camera and put his eye right up to the camera. Mr. Thompson then left his paint shop. When he came back later in his shift, the camera had been removed.

45. On or about January 11, 2005, Mr. Thompson experienced chest pains at work. He requested a ride to the hospital. Dover Downs refused. A Dover Downs employee, Linda Renninger, recognizing his serious medical condition, told Mr.

Thompson that she was going to get her car to take him to the hospital. She never arrived. Upon information and belief, Dover Downs supervisory employee, Mr. Wirtz, instructed Ms. Renninger not to take Mr. Thompson to the hospital. Mr. Thompson ended up driving himself to the hospital.

46. On or about January 21, 2005, Plaintiff filed an amendment to his original Charge of Discrimination against Defendants with the Delaware Department of Labor, alleging age discrimination and retaliation.

47. The Delaware Department of Labor investigated Plaintiff's Charges of Discrimination and issued a Final Determination and Right to Sue Notice to Plaintiff on or about February 22, 2005, received by Plaintiff's counsel on or about March 3, 2005, attached hereto as Exhibit "A."

48. Also on or about February 22, 2005, bonus checks were distributed at Dover Downs to the Dover Downs employees. These bonus checks amount to approximately 1% of each employee's yearly salary. Mr. Thompson did not receive a bonus check. This was the first year that he did not receive a bonus check.

49. Mr. Thompson inquired as to why he did not receive a bonus check. Mr. Richard Wirtz and Mr. Duncan told him that it was because of all the write ups that he had received in the past year. However, there were other similarly-situated employees who received bonus checks in spite of write ups and even in spite of suspensions (of which Mr. Thompson had none).

50. On March 13, 2005, Mr. Thompson injured his neck at work while lifting some scaffolding. He has been out of work since due to the injury, and also due to work-related stress.

A0096

51. His doctors released him to return to work on light-duty. Defendants have instructed Mr. Thompson that they have no light-duty work for him to perform.

52. Upon information and belief, there is another employee, Eric Johnson, who, like Mr. Thompson was injured on the job. However, unlike their treatment of Mr. Thompson, Defendants gave Mr. Johnson the *choice* of returning to work and performing light duty work or staying out on workers' compensation. Mr. Thompson was given no such choice.

53. Based upon information and belief, Mr. Johnson is substantially younger than Mr. Thompson and is in his early 40's.

54. As a result of Dover Downs' discrimination and retaliation against Mr. Thompson, he has been diagnosed with: depression by Dr. Osun Koya for which he treats Mr. Thompson with Xanex. Mr. Thompson also suffers from chest pains and panic attacks which are related to his work.

55. Also as a direct result of Dover Downs discrimination against Mr. Thompson, he has suffered a substantial loss of wages, emotional distress, other physical and mental maladies, lost employment opportunities, and other consequential damages.

## COUNT I
### *Violation of the ADEA*

56. Plaintiff re-alleges and incorporates by reference herein paragraphs 1 - 55.

57. Plaintiff was over the age of forty (40) at the time that he was passed over for promotion to Third Shift Supervisor, Second Shift Supervisor and Outside Maintenance Mechanic 1.

58. The individuals chosen for the Third Shift Supervisor and Second Shift Supervisor were younger than age forty (40) and had less experience and inferior

11

A0097

qualifications than Plaintiff.

59. The individual chosen for the Outside Maintenance Mechanic 1 position was forty-three (43) years old and therefore "substantially younger" than Plaintiff.

60. The individual who was given a choice as to whether to accept light duty or workers' compensation was in his early forties and therefore "substantially younger" than Plaintiff.

61. Defendants' violations of Plaintiff's rights under the ADEA were intentional and therefore done with malice and/or reckless indifference to Plaintiff's federally protected rights and were designed to further injure Plaintiff.

62. As a result of Defendants' actions in violation of the ADEA, Plaintiff suffered and continues to suffer from emotional distress, other physical and mental maladies, lost employment opportunities, lost wages, and other consequential damages.

## COUNT II
### *Retaliation*

63. Paragraphs 1 - 62 are hereby incorporated by reference.

64. Defendants repeatedly retaliated against Plaintiff after he complained to Defendants that he was being discriminated against because of his age.

65. Such retaliation includes, but is not limited to:

    a. writing Mr. Thompson up for violations that he did not commit and/or incidents that did not occur;

    b. increasing his workload;

    c. denying him his yearly bonus;

    d. refusing to give him medical assistance for a condition that occurred on the job; and

A0098

e.    secreting a surveillance camera in his paint shop.

66. As a result of Defendants' actions, Plaintiff suffered and continues to suffer from emotional distress, other physical and mental maladies, lost employment opportunities, lost wages, and other consequential damages.

## COUNT III
### *Breach of Covenant of Good Faith and Fair Dealing*

67. Paragraphs 1 - 66 are hereby incorporated by reference.

68. Immediately following Plaintiff's complaint of discrimination, Defendants began to scrutinize Plaintiff's job-related activities unfairly and as a result, he incurred many more disciplinary write ups than other similarly situated employees.

69. Following Plaintiff's complaint of discrimination, Defendant failed to award Plaintiff his yearly bonus, ostensibly due to his write ups. Yet such year-end bonuses were awarded to virtually all similarly-situated employees regardless of the existence of write ups or suspensions on their employment records.

70. The actions of the Defendants constitute violations of the covenant of good faith and fair dealing implicit in every employment contract.

71. As a result of Defendants' breach of the Covenant of Good Faith and Fair Dealing, Plaintiff suffered and continues to suffer from emotional distress, other physical and mental maladies, lost employment opportunities, lost wages, and other consequential damages.

A0099

## COUNT V
### *Violation of 19 Del. C. § 711*

72.   Paragraphs 1 - 71 are hereby incorporated by reference.

73.   Defendants' aforesaid actions constituted discrimination against Plaintiff on the basis of age in violation of 19 *Del. C.* § 711.

74.   Defendants' violations of Plaintiff's rights under 19 *Del. C.* § 711 were intentional and therefore done with malice and/or reckless indifference to his state-protected rights and were designed to further injure Plaintiff.

75.   As a result of Defendants' actions in violation of § 711, Plaintiff suffered and continues to suffer from emotional distress, other physical and mental maladies, lost employment opportunities, lost wages, and other consequential damages.

## COUNT VI
### *Failure to Promote*

76.   Paragraphs 1 - 75 are hereby incorporated by reference.

77.   Defendants denied Plaintiff career advancement opportunities by refusing his requests for transfers and promotion, despite the fact that Plaintiff was qualified for those transfer and promotional positions.

78.   As a result of Defendants' actions, Plaintiff has lost considerable pay; past, present and future and prospective and suffered and continues to suffer humiliation, mental anguish and emotional pain.

**WHEREFORE**, Plaintiff, Brance F. Thompson respectfully requests this Court enter judgment against the Defendants, and in his favor for damages suffered by him, due to Defendants' actions, including, but not limited to, compensatory damages, punitive

damages, attorneys' fees, the costs of this litigation, pre- and post-judgment interest and such other further relief as this Court deems just and proper.

MARGOLIS EDELSTEIN

*(signature)*

Timothy J. Wilson, Esquire (#4323)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680 Telephone
(302) 777-4682 Facsimile
*Attorney for Plaintiff*
*Brance F. Thompson*

Dated: May 6, 2005

A0101

**STATE OF DELAWARE**
**DEPARTMENT OF LABOR**
**DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION UNIT**

State Case No.: 05010025M

Brance Thompson, Sr.
1679 S. State Street, Lot #72
Dover, DE 19901

vs.

Dover Downs Entertainment
1131 N. Dupont Highway
Dover, DE 19901


RECEIVED MAR 03 2005

**FINAL DETERMINATION AND RIGHT TO SUE NOTICE**

Pursuant to 19 Del. C. § 710, et seq., the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

*Administrative Dismissal with Corresponding Right to Sue Notice.*

In this case, the Department has determined that there is no further benefit which can be provided to the parties under the administrative process. The Department hereby issues this Administrative Dismissal to signal the end of the administrative process without a specific finding. This Administrative Dismissal also provides the Charging Party with a Delaware Right to Sue Notice.

This administrative dismissal is based upon 19 Del. C. § 712 (c) (5) which states: "End of administrative process. In all cases where the Department has dismissed the Charge, issued a No Cause Determination or upon the parties failed conciliation efforts, the Department shall issue a Delaware Right to Sue Notice, acknowledging the Department's termination of the administrative process. Once the Department has issued its preliminary findings pursuant to subsection (2), the Department, in its discretion, may grant a Delaware Right to Sue Notice to a Charging Party."

See the attached Notice of Rights.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Unit. You may have additional rights under federal laws.

A0102

2/22/05
Date issued

Julie K. Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilm*
DOL Form C-12A : 10/04

EXHIBIT A

## NOTICE OF DELAWARE RIGHTS

*The Department of Labor Discrimination Unit provides the following excerpt from 19 Del. C. § 710, et seq. as information regarding the Delaware Right to Sue Notice. If you need legal advice, please seek your own legal counsel.*

**§ 714. Civil action by the Charging Party; Delaware Right to Sue Notice; election of remedies.**

(a) A Charging Party may file a civil action in Superior Court, after exhausting the administrative remedies provided herein and receipt of a Delaware Right to Sue Notice acknowledging same.

(b) The Delaware Right to Sue Notice shall include authorization for the Charging Party to bring a civil action under this Chapter in Superior Court by instituting suit within ninety (90) days of its receipt or within ninety (90) days of receipt of a Federal Right to Sue Notice, whichever is later.

(c) The Charging Party shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A Charging Party is barred by this election of remedies from filing cases in both Superior Court and the federal forum. If the Charging Party files in Superior Court and in a federal forum, the Respondent may file an application to dismiss the Superior Court action under this election of remedies provision.

## NOTICE OF FEDERAL RIGHTS

1. If your case was also filed under federal law and resulted in a "No Cause" finding, you have additional appeal rights with the Equal Employment Opportunity Commission. Under Section 1601.76 of EEOC's regulations, you are entitled to request that EEOC perform a Substantial Weight Review of the DDOL's final finding. To obtain this review, you must request it by writing to EEOC within *15 days of your receipt* of DDOL's final finding in your case. Otherwise, EEOC will generally adopt the DDOL's findings.

2. If your case was also filed under federal law, you have the right to request a federal Right to Sue Notice from the EEOC. To obtain such a federal Right to Sue Notice, you must make a written request directly to EEOC at the address shown below. Upon its receipt, EEOC will issue you a Notice of Right to Sue and you will have ninety (90) days to file suit. The issuance of a Notice of Right to Sue will normally result in EEOC terminating all further processing.

3. Requests to the EEOC should be sent to:

   Equal Employment Opportunity Commission
   The Bourse, Suite 400
   21 S. Fifth Street
   Philadelphia, PA 19106-2515

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

DOL Form C-13 : 8/04

A0103