Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 19624**

*2005 U.S. Dist. LEXIS 19624, \*; 96 Fair Empl. Prac. Cas. (BNA) 872*

DEBRA ALLEN, et al., Plaintiffs, v. NATIONAL RAILROAD PASSENGER CORP., (AMTRAK),
Defendant.

CIVIL ACTION 03-CV-3497

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2005 U.S. Dist. LEXIS 19624; 96 Fair Empl. Prac. Cas. (BNA) 872

September 6, 2005, Decided

**PRIOR HISTORY:** Allen v. AMTRAK, 2004 U.S. Dist. LEXIS 24846 (E.D. Pa., Dec. 7, 2004)

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employees filed suit against defendant employer
alleging claims of racial discrimination in violation of Title VII of the Civil Rights Act of
1964, 42 U.S.C.S. § 2000e et seq. The employer moved for summary judgment.

**OVERVIEW:** The employees alleged that the racial discrimination took many forms,
including a hostile work environment, retaliatory conduct, and the denial of promotions.
The court first found that the January 17, 2001, telephone incident and the May 24, 2001,
flyer incident, while offensive, were sporadic and isolated incidents from which no
reasonable jury could find an objectively hostile work environment. Additionally, the
employer took immediate investigatory, disciplinary, and remedial action after the
occurrence of each incident, such as disciplining an employee for his use of a racial
epithet. Next, the court found that two employees failed to exhaust their administrative
remedies prior to bringing their retaliation claims. Furthermore, no employee had made
out a prima facie case of retaliation. Finally, the court found that the employees failed to
present any evidence from which a reasonable jury could disbelieve the employer's
legitimate, non-discriminatory reason for refusing to promote them. The employer claimed
that the employees were not as qualified as other applicants.

**OUTCOME:** The employer's motion was granted.

**CORE TERMS:** retaliation, summary judgment, flyer, crew, deposition testimony,
interrogatory, derogatory, manager, accusation, telephone, hostile work environment,
pervasive, deposition, racial discrimination, dispatcher, harassment, prima facie case,
racially, discovery, non-discriminatory, severe, personnel, genuine issue of material fact,
supervisory, administrative remedies, offensive, promotion, regular, admit, protected activity

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Pleading & Practice > Pleadings > General Overview

Civil Procedure > Summary Judgment > Standards > Legal Entitlement

Civil Procedure > Summary Judgment > Standards > Materiality

**A0104**

*HN1* In considering a motion for summary judgment, a court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). Only facts that may affect the outcome of a case are "material." All reasonable inferences from the record are drawn in favor of the non-movant. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants 

Civil Procedure > Summary Judgment > Standards > General Overview

Evidence > Procedural Considerations > Burdens of Proof > Allocation

*HN2* On a motion for summary judgment, the movant has the initial burden of demonstrating the absence of genuine issues of material fact. This burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. Once this burden is discharged, the non-movant must then establish the existence of each element on which it bears the burden of proof. A non-moving party with the burden of proof cannot avert summary judgment with speculation or by resting on the allegations in her pleadings, but rather must present competent evidence from which a jury could reasonably find in her favor. More Like This Headnote

Evidence > Procedural Considerations > Burdens of Proof > Initial Burden of Persuasion

Evidence > Relevance > Circumstantial & Direct Evidence

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

*HN3* A plaintiff may succeed on a Title VII discrimination claim through direct evidence or circumstantial evidence of discrimination. In the absence of direct evidence of discrimination, a plaintiff may establish discrimination through circumstantial evidence by way of the well-known, three-part burden-shifting formula. Under the McDonnell Douglas framework, a plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, non-discriminatory reason for the alleged action. When a defendant proffers a legitimate, non-discriminatory reason for its employment decision, the burden returns to the plaintiff to show that the asserted reason was pretextual or that discrimination played a role in the employer's decision-making and had a determinative effect on the outcome. More Like This Headnote  | *Shepardize:* Restrict By Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview 

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting  

*HN4* At the summary judgment stage, the defendant has two opportunities to demonstrate that the plaintiff can not carry her burden of proof at trial: (i) by showing that the plaintiff is unable to establish a prima facie case of discrimination; or (ii) by showing that the plaintiff could not produce sufficient evidence of pretext to rebut an assertion of nondiscriminatory reasons for adverse employment action. Of

A0105

Get a Document - by Citation - 96 Fair Empl. Prac. Cas. (BNA) 872        Page 3 of 22

Case 1:05-cv-00027-CMar    Document 246    Filed 04/28/2006    Page 3 of 22

course, in responding to a defendant's arguments in favor of summary judgment, the plaintiff may not rest upon mere allegations or denials, but must put forward affirmative proof so that a reasonable juror could find intentional discrimination.  More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions 

Labor & Employment Law > Discrimination > Racial Discrimination > Proof > Burdens of Proof > Employee Burdens 

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

*HN5* To establish a prima facie case for a hostile work environment claim based upon racial discrimination, a plaintiff must demonstrate that (1) she suffered intentional discrimination because of her race; (2) the discrimination was sufficiently severe or pervasive to constitute an objective change in the conditions of employment; (3) she was adversely affected by the discrimination; (4) the discrimination would have adversely affected a reasonable person of the same race; and (5) there is a basis to impute liability to defendant.  More Like This Headnote | *Shepardize: Restrict By Headnote*



Civil Procedure > Discovery > Methods > General Overview 

Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > Summary Judgment > Supporting Materials > General Overview 

*HN6* A plaintiff cannot rely on supported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment.  More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > Elements 

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

*HN7* The United States Supreme Court has declared that offensive or harassing conduct rises to the level of a violation of Title VII only when the workplace becomes permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. In other words, conduct must be so extreme so as to amount to a change in the terms and conditions of employment. Whether discrimination was so pervasive or severe can only be determined by looking at the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities

Labor & Employment Law > Discrimination > Retaliation > General Overview

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

*HN8* To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in an activity protected by Title VII; (2) the

A0106

Get a Document - by Citation - 96 Fair Empl. Prac. Cas. (BNA) 872    Page 4 of 22

Case 1:05-cv-00374-WS-M    Document 42    Filed 04/28/2006    Page 4 of 22

employer took either a contemporaneous or subsequent adverse employment action against plaintiff; and (3) a causal relationship exists between the protected activity and the adverse employment action. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Administrative Law > Agency Investigations > General Overview

Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies

Civil Procedure > Justiciability > Exhaustion of Remedies > Administrative Remedies

*HN9* A plaintiff is required to exhaust her administrative remedies prior to filing a Title VII action. 42 U.S.C.S. § 2000(e)-5(e). The parameters of a Title VII action are defined by the scope of the Equal Employment Opportunity Commission (EEOC) investigation which can reasonably be expected to grow out of the charge of discrimination. A plaintiff is therefore not required to exhaust administrative remedies when the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom. However, claims involving instances of discrimination that arise after the completion of an EEOC investigation do not fall within the scope of the agency's investigation. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation > General Overview

*HN10* In the context of a retaliation claim, written reprimands do not constitute adverse employment action unless the plaintiff demonstrates that they effected material change in terms and conditions of employment. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation > General Overview

*HN11* Because retaliatory conduct must be serious and tangible enough to alter the compensation, terms, conditions, or privileges of employment, unsubstantiated oral reprimands and unnecessary derogatory comments do not rise to the level of adverse employment action. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burden Shifting

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

*HN12* To establish a prima facie case of a failure to promote claim, a plaintiff must prove that (i) she belongs to a protected class; (ii) she applied for, was qualified for, and was rejected for a particular position; and (iii) after the rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications. Once a prima facie case is met, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for refusing to promote plaintiff. If met, the burden returns to the plaintiff to point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. More Like This Headnote

**COUNSEL:** **[*1]** DEBRA ALLEN, ET AL, Plaintiff, Pro se, PHILADELPHIA, PA.

For DEBRA ALLEN, ET AL, BEVERLY GREEN, RONALD JONES, JOILYNN SCOTT, BILLY SHAW,

A0107

Get a Document - by Citation - 96 Fair Empl. Prac. Cas. (BNA) 872
Case 1:05-cv-00274-GMS    Document 42-6    Filed 04/28/2006    Page 5 of 22
Page 5 of 22

YVONNE UPSHUR, Plaintiffs: H. FRANCIS DELONE, WAYNE, PA.

For NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), Defendant: JONATHAN R. NADLER, REED SMITH LLP, PHILADELPHIA, PA; SARA A. BEGLEY, REED SMITH LLP, PHILA, PA; JOSEPH J. TUSO, REED SMITH LLP, PHILADELPHIA, PA.

**JUDGES:** Legrome D. Davis, J.

**OPINIONBY:** Legrome D. Davis

**OPINION: MEMORANDUM OPINION**

J. Davis

Presently before the Court are defendant's motion for summary judgment (Doc. No. 60), defendant's Statement of Undisputed Facts in Support of its Motion for Summary Judgment (Doc. No. 61), and plaintiffs' responses thereto (Doc. No. 64-65). For the following reasons, this Court grants defendant's motion for summary judgment.

## I. Procedural and Factual History

This litigation stems from claims of racial discrimination filed by six African-American plaintiffs, Debrah Allen ("Allen"), Beverly Green ("Green"), Ronald Jones ("Jones"), Joilynn Scott ("Scott"), Billy Shaw ("Shaw"), and Yvonne Upshur ("Upshur") (collectively "plaintiffs"), against their employer, defendant National **[*2]** Railroad Passenger Corporation ("defendant"). All plaintiffs currently remain employees of defendant. (See Am. Compl., at PP 1-12).

Defendant performs operational and administrative functions at its Centralized National Operations Center ("CNOC facility") in Wilmington, Delaware. (See Schmitt Decl., attached as Ex. H to Def. Br., at PP 2-3). These functions include crew management, national operations, police duties, and national safety. During the first six months of 2001, Allen, Green, Jones, Scott, and Shaw held positions in the crew management department at the CNOC facility. (Id., at P 6). From June 2000 until April 2002, Upshur held several management-level positions in the Mail & Express department, located outside the crew management department. (Id., at P 5; Uphsur Dep., attached as Ex. B to Def. Br., at 397-400). In April 2001, Michael Kates assumed the responsibilities of Senior Director for Crew Management at the CNOC facility. (See Kates Dep., attached as Ex I to Pl. Br., at 16; Kates Decl., attached as Ex. J to Def. Br., at P 2).

Plaintiffs allege that they were subject to pervasive racial discrimination during their employ at the CNOC facility. **[*3]** Plaintiffs allege that this racial discrimination took many forms, including a hostile work environment, retaliatory conduct, and the denial of promotions. Plaintiffs' amended complaint, interrogatory responses, and deposition testimony present the following, specific examples of racially discriminatory conduct at the CNOC facility.

## A. January 17, 2001 Incident

On January 17, 2001, Cliff Snow, a Caucasian management employee from Kansas City, Missouri made a racially offensive remark during a telephone call with an employee, Carmen Wilson, from the CNOC facility (the "January 17, 2001 telephone incident"). (See Hinton Decl., attached as Ex. V to Def. Br., at PP 2-3; Clifford Snow Waiver, attached as Ex. Z to Def. Br.). According to plaintiffs' amended complaint, Snow stated that a "bunch of n*****s are running the operation" at the CNOC facility. (See Am Compl., at P 23). None of the plaintiffs was a party to the conversation in which the racially offensive remark was made. (See Def. Statement of Undisputed Facts, at P 20; Pl. Response to Def. Statement, at P 20).

Nor did the plaintiffs overhear the remark at the time it was made. (Id.)

Defendant investigated **[*4]** the January 17, 2001 incident. (See Hinton Decl., attached as Ex. V to Def. Br., at PP 1-3). As a result of the investigation, and pursuant to the terms of the collective bargaining agreement, Snow was suspended without pay for ten days, and was removed from his special position as road foreman. (Id., at P 4).

**B. May 24, 2001 Incident**

On May 24, 2001, an unidentified source posted a racially derogatory flyer at the CNOC facility (the "May 24, 2001 flyer incident"). The flyer contained the face of an African-American male, with stereotypical physical features and a giant "slash mark" through his countenance. All plaintiffs saw the flyer, although only one of the plaintiffs saw the flyer when it was posted. (See Upshur Dep., attached as Ex. B to Def. Br., at 128; Shaw Dep., attached as Ex. C. to Def. Br., at 117-18; Green Dep., attached as Ex. D to Def. Br., at 61-63; Scott Dep., attached as Ex. E to Def. Br., at 136-38; Allen Dep., attached as Ex. F to Def. Br., at 144-46; Jones Dep., attached as Ex. G to Def. Br., at 86-88).

After the discovery of the flyer in the early morning of May 24, 2001, certain managerial employees searched the CNOC facility for additional **[*5]** copies. (See Schmitt Decl., attached as Ex H to Def. Br., at P 9). A copy was sent to defendant's Dispute Resolution Office ("DRO") in Washington, DC at 7:30 a.m. on May 24, 2001, and defendant quickly scheduled an all-employee meeting to take place at the CNOC facility to discuss the issue. (Id., at P 10). In addition, defendant's police force was called, and an officer arrived on the scene at 8:05 a.m. to file an incident report, to review security lists of personnel entering and exiting the building, and to check the video footage from the surveillance cameras. (Id., at PP 12-14). Defendant's National Chief of Police, Ernest Frazier, subsequently shut down the CNOC facility at 9:00 a.m. to conduct a 30-minute all-employee meeting, during which Frazier reiterated that the incident was in violation of defendant's policies, that such misconduct would not be tolerated, and that the incident would be investigated with rigor. (Id., at PP 15-16).

Each plaintiff admits that there were no subsequent displays of racially derogatory flyers at the CNOC facility. (See Upshur Dep., at 366; Shaw Dep., at 124; Green Dep., at 100; Scott Dep., at 145; Allen Dep., at 149; and **[*6]** Jones Dep., at 102). However, Green claims that on May 25, 2001, the day after the flyer incident, she observed Kates hold up the flyer in his office and laugh at the derogatory picture with two Caucasian co-workers. (See Am. Compl., at P 27; Green Dep., at 77-81). Green estimates that she was between 100 feet and 200 feet from Kates' office at the time. (See Green Dep., at 80-81).

Green did not file a complaint with defendant about Kates' behavior. Instead, the DRO received an E-mail from an employee at the CNOC facility conveying Green's allegation. (See Marcelle Decl., attached as Ex. A to Def. Br., at P 9). Within ten days, a meeting was scheduled with Green, Kates, and a DRO representative; Green refused to attend the June 14, 2001 meeting. (Id.; June 20, 2001 Memorandum Describing the June 15, 2001 Meeting, attached as Ex. A-6 to Marcelle Decl.; Green Dep., at 137-149).

**C. Other Incidents**

Plaintiffs' amended complaint, interrogatory responses, and brief in response to defendant's summary judgment motion fail to describe with specificity other instances of racial discrimination. However, the deposition testimony of each individual plaintiff, as introduced **[*7]** through defendant's motion for summary judgment, n1 identifies additional discreet and personalized instances of alleged racial discrimination in the form of harassment, retaliation, and denials of promotions. (See Def. Statement of Undisputed Facts, at PP 54-163). These allegations are inventoried and addressed during the discussion section

of the opinion.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Rather than introducing the entirety of each plaintiff's deposition or those portions that identify specific instances of discrimination, plaintiffs rely upon the excerpts of the deposition transcripts attached to defendant's motion. In other words, plaintiffs' response to defendant's summary judgment motion relies upon defendant's framing of the facts in support of each plaintiff's claim.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

### D. Complaint

Plaintiffs filed a complaint against defendant on June 5, 2003 (Doc. No. 1), which was subsequently amended on January 26, 2004. (Doc. No. 5). Plaintiffs' amended complaint contains six counts, all of which allege violations of Title VII of the **[*8]** Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.. (See Am. Compl. at P 14). Count I alleges that the defendant created a hostile work environment for plaintiffs. (Id. at PP 19-28). This claim is based upon: the January 17, 2001 telephone incident; the May 24, 2001 flyer incident; and a number of incidents where "white managerial supervisory personnel made false accusations about plaintiffs and other African Americans and yelled at them in a derogatory manner." (Id., at PP 22-24).

Count II alleges that the defendant retaliated against plaintiffs after they filed claims with the EEOC. (Id. at PP 29-34). Specifically, plaintiffs allege that management supervisory personnel yelled derogatory remarks at plaintiffs, refused to provide back pay, made false accusations of poor work performance, demoted plaintiffs without cause, refused to make lateral transfers, and suspended plaintiffs' employee benefits. (Id., at PP 30-33).

Counts III-VI allege that the defendant failed to promote Jones, Scott, Shaw, and Upshur because of their race. (Id. at PP 35-54). Despite allegedly being better qualified than other Caucasian applicants who were **[*9]** selected, Jones alleges that he was denied the position of lead crew dispatcher and customer service agent; Scott alleges that she was denied the position of lead crew dispatcher; Shaw alleges that he was denied the position of general advocate; and Uphsur alleges that she was denied promotions to five different positions on the basis of race. (Id., at PP 35-54).

### E. Discovery

On October 21, 2004, defendant filed a motion to compel interrogatories and responses to requests for document production. n2 (Doc. No. 21). On December 6, 2004, the Court granted in part defendant's motion, rejecting plaintiff's claims of privilege and requiring each plaintiff, within ten days, to supplement his or her response to interrogatories that sought the factual basis behind the allegations in the amended complaint. (Doc. No. 26, at P 1). On January 6, 2005, following a phone conference with counsel for all parties, the Court issued a second Order requiring plaintiff to comply fully with the Court's December 6, 2004 Order. (Doc. No. 30).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The interrogatories sought the factual basis behind each plaintiff's claims. For instance, Interrogatory No. 2 requested "all facts upon which you base your claims against Defendant."

Interrogatory No. 7 requested each plaintiff to "identify and describe in detail each and every act(s) of discrimination and retaliation which you claim you experienced during your employment at Amtrak . . ." Interrogatories No. 10, No. 11, and No. 12 requested each plaintiff to describe the factual basis for specific allegations in the amended complaint. (See Interrogatory Requests, attached as Ex. M, O, P, R, S, U to Def. Br.).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*10]**

On February 15, 2005, defendant filed a motion for sanctions due to alleged discovery abuses by plaintiffs. (Doc. No. 32). On December 26, 2005, the Court issued an Order declining to impose sanctions on plaintiffs or their counsel at this time, but admonished plaintiffs to immediately comply with the Court's December 6, 2004 and January 6, 2005 Orders requiring the immediate supplementation of answers to defendant's interrogatory requests that sought the factual predicate behind plaintiffs' allegations of racial discrimination. (Doc. No. 38). The Court also granted defendant the opportunity to renew its motion for sanctions at the close of discovery. (Id.).

On May 26, 2005, defendant filed a renewed motion for sanctions, arguing in part that plaintiffs had yet to provide comprehensive responses to defendant's interrogatory requests. (Doc. No. 50, at 6-15). On June 17, 2005, the Court denied in part and granted in part defendant's motion for sanctions. (Doc. No. 56). The June 17, 2005 Order found that plaintiffs committed numerous discovery violations, including failing to respond in a timely and substantive fashion both to defendant's interrogatory requests concerning the factual **[*11]** allegations in the amended complaint and to this Court's discovery Orders. (Doc. No. 56, at P 1). However, the Court found that dismissal of the complaint was too drastic a sanction. (Id.). Instead, the Court granted defendant's motion to the "extent that defendant seeks to preclude plaintiffs from introducing any factual evidence, including oral testimony, responsive to defendant's discovery requests or deposition questions that was not produced or disclosed to defendant during the course of discovery." (Id., at P 2).

On August 1, 2005, defendant filed a motion for summary judgment (Doc. No. 60), along with a statement of undisputed material facts in support of its motion for summary judgment. (Doc. No. 61). On August 15, 2005, plaintiffs filed a memorandum in opposition to defendant's motion (Doc. No. 64), as well as a statement of disputed material facts. (Doc. No. 65).

## II. Discussion

Plaintiffs' amended complaint brings three categories of race discrimination claims against defendant: hostile work environment; retaliation; and failure to promote. Defendant moves for summary judgment on all claims.

### A. Summary Judgment

Two standards are applicable to **[*12]** the resolution of defendant's instant motion: the summary judgment standard of Fed. R. Civ. P. 56; and the standard for allocating the burden of proof in Title VII litigation.

### 1. Summary Judgment Standard

*HN1* In considering a motion for summary judgment, this Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Arnold Pontiac-

GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986). Only facts that may affect the outcome of a case are "material." Anderson, 477 U.S. at 248, 91 L. Ed. 2d 202. All reasonable inferences from the record are drawn in favor of the non-movant. See id. at 256.

*HN2* The movant has the initial burden of demonstrating the absence of genuine issues of material fact. This "burden . . . may be **[*13]** discharged by 'showing' that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once this burden is discharged, the non-movant must then establish the existence of each element on which it bears the burden of proof. See J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990). A non-moving party with the burden of proof cannot avert summary judgment with speculation or by resting on the allegations in her pleadings, but rather must present competent evidence from which a jury could reasonably find in her favor. Anderson, 477 U.S. at 248; Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); Woods v. Bentsen, 889 F. Supp. 179, 184 (E.D. Pa. 1995).

## 2. Title VII Standard

*HN3* A plaintiff may succeed on a Title VII discrimination claim through direct evidence or circumstantial evidence of discrimination. See Fontaine v. Central Square Condominiums, Inc., 2001 U.S. Dist. LEXIS 24208, 2001 WL 34355639, **[*14]** at *5 (E.D. Pa. Dec. 28, 2001). In the absence of direct evidence of discrimination, a plaintiff may establish discrimination through circumstantial evidence by way of the well-known, three-part burden-shifting formula. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). Under the McDonnel Douglas framework, a plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 318-319 (3d Cir. 2000). Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to assert a legitimate, non-discriminatory reason for the alleged action. See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 (3d Cir. 1996). When a defendant proffers a legitimate, non-discriminatory reason for its employment decision, the burden returns to the plaintiff to show that the asserted reason was pretextual or that discrimination played a role in the employer's decision-making and had a determinative effect on the outcome. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). **[*15]**

*HN4* At the summary judgment stage, the defendant has two opportunities to demonstrate that the plaintiff can not carry her burden of proof at trial: (i) by showing that the plaintiff is unable to establish a *prima facie* case of discrimination; or (ii) by showing that the plaintiff could not produce sufficient evidence of pretext to rebut an assertion of nondiscriminatory reasons for adverse employment action. Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989). Of course, in responding to a defendant's arguments in favor of summary judgment, the plaintiff may not "rest upon mere allegations or denials," but must put forward affirmative proof so that a reasonable juror could find intentional discrimination. Anderson, 477 U.S. at 256-57.

## B. Hostile Work Environment

*HN5* To establish a *prima facie* case for a hostile work environment claim based upon racial discrimination, a plaintiff must demonstrate that: (1) she suffered intentional discrimination because of her race; (2) the discrimination was sufficiently severe or pervasive to constitute an objective change in the conditions of employment; (3) she was adversely affected by the discrimination; **[*16]** (4) the discrimination would have adversely affected a reasonable person of the same race; and (5) there is a basis to impute liability to defendant. See, e.g., Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001).

**A0112**

Get a Document - by Citation - 86 Fair Empl. Prac. Cas. (BNA) 872

Case 1:03-cv-00527-SMS Document 42-6 Filed 04/28/2006 Page 10 of 22

Defendant argues that each plaintiff cannot meet his or her burden of establishing a hostile work environment. (See Def. Br., at 6-13). First, defendant asserts that plaintiffs have failed to put forth evidence to support the myriad of general and conclusive allegations of intentional race-based discrimination in the amended complaint. (Id., at 6-10). As a result, according to defendant, plaintiffs' hostile work environment claim is predicated upon just two isolated, unrelated incidents of discrimination, which do not rise to the level of "severe or pervasive" discrimination. (Id., at 14-15). Second, defendant asserts that even if the specific incidents described by plaintiff constitute "severe or pervasive" discrimination, no basis exists for *respondeat superior* liability, particularly because defendant provided a reasonable system for lodging complaints of discrimination and because, upon learning of the harassment, **[*17]** defendant took appropriate action. (Id., at 11-13).

**1. Plaintiffs' hostile work environment claims consist of two incidents of racial discrimination.**

Plaintiffs' amended complaint predicates the hostile work environment claims upon the following instances of intentional discrimination: the January 2001 telephone incident; the May 2001 flyer incident; and several other incidents where "white managerial/supervisory personnel made false accusations about plaintiffs and other African-Americans and yelled at them in a derogatory manner." (See Am Compl., at PP 22-24). Defendant argues that plaintiffs' hostile work environment claims consist entirely of the January 2001 telephone incident and the May 2001 flyer incident. In so doing, defendant claims that plaintiffs offer no evidence in support of their allegations that "managerial/supervisory personnel made false accusations about plaintiffs and other African-Americans and yelled at them in a derogatory manner." (Id., at P 24).

In response, plaintiffs assert that their hostile work environment claims are based on a pattern of regular and pervasive discrimination, which covers more than just the January 2001 telephone **[*18]** incident and the May 2001 flyer incident. (See Pl. Br., at 3-5). To support this proposition, plaintiffs rely exclusively on plaintiffs' supplemental responses to defendant's Interrogatory No. 2, which requested "all facts upon which you base your claims against defendant." n3 (Id.; Pl. Answer to Def. Statement, at P 1). n4


- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 See Supplemental Interrogatory Responses to Interrogatory No. 2, attached as Ex. M, O, P, R, S, U to Def. Br.

n4 In fact, plaintiffs' brief in opposition to defendant's summary judgment motion merely quotes verbatim from plaintiffs' interrogatory response, without providing deposition testimony or other evidentiary support for these conclusions.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

This Court finds that plaintiffs have failed to describe, let alone substantiate, any incidents of purported racial harassment outside of the January 2001 telephone incident and the May 2001 flyer incident. A detailed review of the record supports this finding. First, plaintiffs' supplemental interrogatory responses fall woefully **[*19]** short of raising a genuine issue of material fact as to additional incidents of racial harassment. After briefly describing the January 2001 telephone incident and the May 2001 flyer incident, each supplemental interrogatory response merely repeats P 24 (and other allegations) of the amended complaint and states in conclusive fashion that "white managerial/supervisory personnel" made "false

accusations" about plaintiffs' work performance and "yelled at them in a derogatory manner." (See Pl. Br., at 3-5). n5 In other words, plaintiffs' supplemental interrogatory responses fail to describe facts in support of these allegations, such as which managerial employees made the false accusations, what was said, to whom were the accusations made, and when the incidents took place. (See Pl. Interrogatory and Supplemental Interrogatory Responses, attached as Ex. M, O, P, R, S, U) to Pl. Br.); Solomon v. Soc'y of Auto. Eng'rs, 41 Fed. Appx. 585, 586 (3d Cir. 2002) (unpublished opinion) [HN6]("plaintiff cannot rely on supported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment"). Second, many plaintiffs testified during their depositions [*20] that they could not remember whether they were subject to false or derogatory accusations. n6 Third, no plaintiff has put forth any evidence to support the general allegations of false and derogatory accusations that plaintiffs' supplemental interrogatory responses reference. Fourth, plaintiffs' Statement of Disputed Facts conveniently omits a response to PP 55-56 of defendant's Statement of Undisputed Facts, in which defendant asserts that plaintiffs failed to provide evidence to substantiate their claims of "false accusations" and derogatory statements during discovery. (See Pl. Statement of Disputed Facts, at PP 55-56).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 The supplemental interrogatory response of each plaintiff states, in relevant part:

> All plaintiffs were subjected to pervasive and regular discrimination and harassment because of their race.

> Examples of such racial discrimination and harassment include an incident where flyers derogatory to blacks were placed in several spots around the office space where plaintiffs worked and an incident where a white management employee of Amtrak was heard stating on the telephone that "a bunch of n*****s are running the operation."

> In several other incidents of racial discrimination and harassment white managerial/supervisory personnel made false accusations about plaintiffs and other African Americans and yelled at them in a derogatory manner. When plaintiffs and others advised appropriate supervisory/management personnel of the racial discrimination and harassment to which plaintiffs were being subjected, defendant failed to conduct any real investigation of the problem and failed to take any effective corrective action. Indeed, Mike Kates, the Amtrak General Management of Crew Management Services at the office where plaintiffs worked, laughed when he was shown a copy of the racially derogatory flyer that had been posted throughout that area . . . .

(See Supplemental Interrogatory Responses, attached as Ex. M, O, P, R, S, and U to Def. Br., at Tabs 2 and 3 thereto). [*21]

n6 Plaintiff Upshur admits that she has no knowledge of alleged false accusations or derogatory remarks. (See Upshur Dep., at 424-426). Plaintiff Green admits that she could not remember whether anyone at Amtrak every yelled at her or made false accusations. (See Green Dep., attached as Ex. D, at 204-205, 238-239). Furthermore, plaintiffs Allen and Jones fail to identify any piece of evidence, including deposition testimony, providing facts to substantiate the allegations of "derogatory remarks" or "false accusations."

A0114

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Furthermore, to the extent that plaintiffs' deposition testimony identifies sporadic instances of alleged racial harassment other than false and derogatory accusations by white managerial employees, plaintiffs have presented no evidence to support these examples. Nor have plaintiffs demonstrated that this alleged harassment was motivated by race. n7 See, e.g., Tucker v. Merck & Co., Inc., 131 Fed. Appx. 852, 859 (3d Cir. 2005) (unpublished opinion) (affirming grant of summary judgment to defendant on plaintiff's retaliation claim when plaintiff presents **[*22]** no direct evidence of discrimination, despite plaintiff's subjective disagreement with defendant's decision-making and plaintiff's opinion that decisions were racially motivated); James v. Allentown Bus. Sch., 2003 U.S. Dist. LEXIS 12046, 2003 WL 21652189, at *17 (E.D. Pa. June 2, 2003) (refusing to consider harassing behavior at work part of racial harassment claim when plaintiff presents no evidence, other than own conclusory allegations, to suggest that facially-neutral incidents were motivated by racial animus).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 For instance, Shaw testified that she was subject to abusive language while on the telephone with an "acting manager," but conceded that this unidentified person never made racially derogatory comments during the course of the phone calls. (See Shaw Dep., at 185-186). Although raising the issue in his deposition, Jones now concedes that his African-American manager, Quinn McRae, did not discriminate against him on the basis of his race in issuing a written warning for excessive telephone use and for attendance issues, but, instead, on the basis of personal dislike (See Pl. Statement of Disputed Facts, at P 65). Although Upshur testified that she was harassed by manager Ben Cornelius and a human resources representative by receiving telephone calls while on sick leave, Upshur admitted that there was a legitimate business reason for those calls--to discuss her return to work and the general restructuring of the department. (See Upshur Dep., at 240-242, 244-245). Furthermore, Upshur was "not sure" whether race played a role in the phone calls, and admitted to lacking evidence to support such a theory. (Id., at 242-43). Allen admits that Kates' favorable treatment of managers was based on the existence of a prior relationship, rather than on race. (See Pl. Response to Def. Statement of Undisputed Facts, at P 62). Although Green testified that overtime was unfairly assigned based on race, Green also admitted that overtime was based upon the duration of a parties' shift, so that employees who worked eight-hour shifts would receive overtime and employees who worked ten-hour shifts, like Green, would not. (See Green Dep., at 111-116). Finally, Scott testified that she was unfairly disciplined for sleeping at work on May 19, 2003, but implicitly conceded that race played no part in this discipline and that she had "no problems" with the disciplining manager. (See Scott Dep., at 192-198).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*23]**

This Court finds that plaintiffs have failed to present any facts in support of allegation P 24 in the amended complaint. Nor have plaintiffs put forth evidence either to support any additional incidents of harassment identified in their deposition testimony or to suggest that such harassment was motivated by racial animus. Accordingly, this Court agrees with defendants' position that the hostile work environment claim is founded upon the two specific incidents of discrimination described in the amended complaint (i.e., the January 2001 telephone incident and the May 2001 flyer incident); and that plaintiffs' unsupported assertions of being subject to unspecified "false accusations" by unidentified "managerial/supervisory personnel" do not properly form part of this claim.

**A0115**

## 2. The two incidents fail to constitute pervasive or severe discrimination necessary to establish a violation of Title VII.

HN7 The Supreme Court has declared that offensive or harassing conduct rises to the level of a violation of Title VII only when the workplace becomes "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [*24] victim's employment and create an abusive working environment." See, e.g., Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 78, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998). In other words, conduct must be so extreme so as to "amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 787, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998). Whether discrimination was so pervasive or severe can only be determined by looking at the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, and whether it unreasonably interferences with an employee's work performance. See, e.g., Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993).

The January 17, 2001 telephone incident involved a Caucasian management employee from Kansas City making a racist remark during a telephone call with the CNOC facility. None of the plaintiffs overheard the remark, and the racial epithet was not directed at a particular plaintiff. In fact, Allen, Scott, Show, Jones, and Upshur testified that [*25] they were unsure as to whether they were in the building at the time of the incident. Furthermore, despite knowledge of how to register an internal discrimination complaint, none of the plaintiffs lodged such a complaint. (See Def. Statement of Undisputed Facts, at P 20; Pl. Response to Def. Statement, at P 20).

The May 24, 2001 flyer incident occurred four months later. The flyer was posted by an anonymous source, and contained a derogatory image of an African-American male with a "slash mark" through his countenance. Green further contends that on May 25, 2001, she witnessed her manager, Michael Kates, laugh at the flyer in the presence of two white co-workers. (See Green Dep., at 78-81, 83). n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Kates denies this allegation. (See Kates Dep., attached as Exhibit J, at P 10).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

These two incidents fail to rise to the level of "severe or pervasive" discrimination at the workplace. Plaintiff's claim rests upon two incidents, rather than daily, weekly, or monthly instances of racial harassment. The [*26] incidents were separated by four months. The incidents involved different conduct, none of which was physically threatening, and were perpetrated by different individuals, one of whom was located in Kansas City, Missouri, hundreds of miles away from the CNOC facility. Moreover, neither incident was directed at a particular plaintiff. Nor does the record contain evidence that these incidents interfered with plaintiffs' work performance. n9 The Court further notes that defendant took immediate investigatory, disciplinary, and remedial action after the occurrence of each incident, such as disciplining Snow for his use of a racial epithet, closing the CNOC facility for an all-employee meeting on May 24, 2001 to discuss the flyer, and scheduling a meeting with Green, Kates, and a DRO representative to discuss Green's allegations that Kates laughed at the flyer. Finally, plaintiffs' failure to address defendant's argument that the January 17, 2001 and May 24, 2001 incidents fail as a matter of law to rise to the level of a hostile work environment highlights the meritoriousness of defendant's position. (See Pl. Br., at 5 n.1).

A0116

Get a Document - by Citation - 96 Fair Empl. Prac. Cas. (BNA) 872

Case 1:05-cv-00024-SMJ   Document 42-6   Filed 04/28/2006   Page 14 of 22

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 Plaintiffs continue to remain employees of defendant.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*27]

This conclusion comports with precedent from the Third Circuit and from other jurisdictions. For instance, the Third Circuit has consistently declared that conduct objectively more egregious and frequent than the incidents described above, the substance of plaintiffs' claims, fails to meet the "severe or pervasive" standard. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 96 (3d Cir. 2005) (unpublished opinion) (no pattern of racially offensive conduct when manager encourages plaintiff to drink alcohol due to stereotypical belief that alcohol placates Native Americans, tells an offensive story concerning Native Americans, and states that "I finally got rid of that n****r" after plaintiff's transfer); King v. City of Philadelphia, 66 Fed. Appx. 300, 305 (3d Cir. 2003) (unpublished opinion) (no regular and pervasive discrimination when co-employee calls plaintiff a racial epithet, physically pushes plaintiff, and threatens to sabotage his work record); Morgon v. Valenti Mid-Atlantic Mgmt., 2001 U.S. Dist. LEXIS 22420, 2001 WL 1734260, at *3 (E.D. Pa. Dec. 14, 2001) (no regular and pervasive discrimination during plaintiff's one year of employment when [*28] plaintiff's co-worker stated that she "hated all n*****s" and when another co-worker stated that she would never hire Jamaicans; James v. Allentown Bus. School, 2003 U.S. Dist. LEXIS 12046, 2003 WL 21652189, at *16-17 (E.D. Pa. June 2, 2003) (no regular and persuasive discrimination when supervisor sends African-American plaintiff picture of Adolf Hitler and racist poem). Other courts outside of the Third Circuit have reached similar results. See, e.g., Smith v. Leggett Wire Co., 220 F.3d 752, 760 (6th Cir. 2000) (no regular and pervasive discrimination when, over African-American plaintiff's twenty year period of employment, co-worker tells plaintiff that his "n****r ass ain't going to work here," supervisors circulate racially discriminatory cartoon depicting the lynching of African-American man and tell "n****r" jokes, and foreman refers to black employee as "gorilla"); Bolden v. PRC Inc., 43 F.3d 545, 550-551 (10th Cir. 1995) (no regular and pervasive discrimination when co-workers both make overtly racial remarks towards African-American plaintiff, including telling plaintiff that they are in the "Ku Klux Klan" and using term "n****r" in plaintiff's presence, [*29] and distribute racially derogatory cartoon); Sanchez v. City of Santa Ana, 936 F.2d 1027, 1036-1037 (9th Cir. 1999); McCoy v. City of New York, 131 F. Supp. 2d 363, 374 (E.D. N.Y. 2001) (hanging noose from pipes in defendant's facility, posting of painting that contained racially offensive advertisement of African American man and boy with exaggerated facial features, and confrontation with coemployee who allegedly called African-American plaintiff a "f***ing n****r," spat at him, and obscenely gestured at him fail to constitute regular and pervasive discrimination).

In summary, this Court finds that the January 17, 2001 telephone incident and the May 24, 2001 flyer incident, while offensive, are sporadic and isolated incidents from which no reasonable jury could find an objectively hostile work environment. n10

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 By granting defendant's summary judgment motion on this basis, the Court need not address defendant's additional arguments that no *respondeat superior* liability exists and that Uphsur failed to exhaust her administrative remedies as to her hostile work environment claim. (See Def. Br., at 14-18).

**A0117**

Get a Document - by Citation - 06 Fair Empl. Prac. Cas. (BNA) 852    Page 15 of 22

04/28/2006    Page 15 of 22

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*30]**

## B. Retaliation Claim

*HN8*⬆To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in an activity protected by Title VII; (2) the employer took either a contemporaneous or subsequent adverse employment action against plaintiff; and (3) a causal relationship exists between the protected activity and the adverse employment action. See, e.g., Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Defendant argues that each retaliation claim fails as a matter of law. (See Def. Br., at 18-23). First, defendant argues that Shaw and Scott failed to exhaust their administrative remedies as to their retaliation claim. (Id., at 19-21). Second, defendant argues that no plaintiff can establish the requisite causal nexus between an adverse employment action and protected activity, such as the filing of an EEOC charge. (Id., at 18). Finally, defendant contends that even if plaintiffs could establish a *prima facie* case of retaliation, the record lacks any evidence to establish the pretextual nature of defendant's legitimate, non-discriminatory reason for each adverse employment action. **[*31]** (Id., at 18-23).

## 1. Plaintiffs Shaw and Scott failed to exhaust their administrative remedies as to their retaliation claims.

*HN9*⬆A plaintiff is required to exhaust her administrative remedies prior to filing a Title VII action. See 42 U.S.C. § 2000e-5(e). The parameters of a Title VII action are "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-399 (3d Cir. 1976). A plaintiff is therefore not required to exhaust administrative remedies when the "acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). However, claims involving instances of discrimination that arise after the completion of an EEOC investigation do not fall within the scope of the agency's investigation. See Martinez v. Potter, 347 F.3d 1208, 1210-1211 (10th Cir. 2003) (plaintiff must file new EEOC charge for discreet discriminatory act that occurs after date of EEOC **[*32]** charge and failure to file new EEOC charge may render claim time-barred); Major v. Plumbers Local Union, 370 F. Supp. 2d 118, 125-126 (D.D.C. 2005) (refusing to hear claims based on alleged discrete acts of discrimination occurring after EEOC investigation because plaintiffs "would need to have independently exhausted administrative remedies before asserting those claims in the present suit"); Crumpton v. Potter, 305 F. Supp. 2d 465, 475-476 (E.D. Pa. 2004) (declining to address merits of incident that formed basis of retaliaton claim because incident occurred after completion of EEOC investigation).

Each act of retaliation identified in Shaw's deposition took place between July 2003 and November 2003, after the EEOC completed its investigation of Shaw's EEOC Charge, on May 19, 2003. (See Shaw Dep., at 45-46, 51-52, 73-74, 105-106, 240-243; Notice of Right To Sue, attached as Ex. C-19 to Shaw Dep.). Furthermore, as expressed in her deposition, the lone basis for Scott's retaliation claim, her disqualification from the crew management department on October 31, 2003, occurred more than five months after the EEOC closed its investigation of Scott's **[*33]** charge of discrimination and issued Scott a Notice of Right to Sue on May 19, 2003. (See Scott Dep., at 179, 265-268; Notice of Right to Sue, attached as E-73 to Scott Dep.). Accordingly, because the acts forming the basis for the retaliation claims of Scott and Shaw took place after the completion of the EEOC investigation, a chronology to which plaintiffs subscribe, n11 Scott and Shaw failed to exhaust their administrative remedies before filing this action; and their claims are not properly before this Court.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 See Plaintiffs' Response to Defendant's Statement of Undisputed Facts, at PP 77, 90.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## 2. Plaintiffs fail to provide evidence of retaliatory conduct that rises to the level of an adverse employment action. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n12 For purposes of this analysis, the Court assumes that the retaliation claims of Shaw and Scott are properly before the Court.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*34]**

This Court finds that no plaintiff has provided evidence to make out the first element of a *prima facie* case of retaliation (i.e., retaliatory conduct that materially altered the terms and conditions of plaintiffs' employment). See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). For instance, plaintiffs' brief in opposition to defendant's summary judgment motion fails to identify any act of retaliation against any plaintiff. Plaintiffs' response to defendant's statement of undisputed material facts, which does little more than deny or admit defendant's factual assertions, fails to present in affirmative fashion facts and evidence in support of plaintiffs' retaliation claims. See Celotex, 477 U.S. at 324 (non-moving parties must go beyond pleadings and present evidence of "specific facts showing that there is a genuine issue for trial"). Moreover, no plaintiff provided a substantive response to defendant's interrogatory request to describe the evidence supporting the retaliation claims; instead, each plaintiff simply stated that they did not recall each and every act of racial discrimination and retaliation, while refusing **[*35]** to disclose any facts in support of his or her claim. (See Plaintiffs' Interrogatory Responses and Supplemental Responses, at PP 10, 11).

Plaintiffs rely entirely upon references to their own deposition testimony, without any accompanying analysis, to defeat summary judgment. However, plaintiffs still provide no evidence, such as affidavit testimony or admissible documentation, in support of the alleged instances of retaliation identified in plaintiffs' deposition testimony. n13 Furthermore, the allegedly "retaliatory" actions cited by Shaw, n14 Upshur, n15 Jones, n16 and Allen n17 in their deposition testimony do not rise to the level of cognizable adverse employment actions under Title VII, as plaintiffs failed to demonstrate that these incidents effectuated a material change in the terms and conditions of their employment. See, e.g., Weston v. Pennsylvania, 251 F.3d 420, 430-431 (3d Cir. 2001) [HN10] (written reprimands do not constitute adverse employment action unless plaintiff demonstrates that they effected material change in terms and conditions of employment); Robinson, 120 F.3d at 1299-1301 [HN11] (because retaliatory conduct must be serious and tangible **[*36]** enough to alter the compensation, terms, conditions, or privileges of employment, "unsubstantiated oral reprimands" and "unnecessary derogatory comments" do not rise to the level of adverse employment action).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n13 For instance, Green failed to identify a single instance of alleged retaliation in her deposition. (See Green Dep., at 202). Scott testified briefly that he suffered retaliation by his manager, John Homes, in the form of disqualification from his job in the crew management

department in 2003, but admits that this disqualification was not based on race, that he offered no testimony about retaliation by Humes, and that he did not "recall" the incident with Humes. (See Scott Dep., at 179, 236). Jones failed to provide any documentation to support his claims that managers issued a written reprimand for excess telephone usage and initiated an investigation for failing to properly recrew a train. (See Jones Dep., at 150-53, 228-232).

n14 Shaw's retaliation claim, according to his deposition testimony, consists of the following acts of retaliation: (i) the denial of training between July 2003 and October 2004; (ii) Kates implemented a policy in November 2003 transforming 8-hour shifts into 12-hour shifts; and (iii) Kates waited several hours before welcoming Shaw back to work on July 3, 2003. (See Shaw Dep., at 45-48, 73-74). Clearly, the failure to welcome an employee back to work at the beginning of the day does not constitute an "adverse employment action." See Robinson, 120 F.3d at 1299-1301. Furthermore, although a denial of training and a mandatory shift change may constitute material changes in the terms of employment, Shaw admitted that these modifications were not retaliatory, as his entire work group did not receive training and the shift change in November 2003 was department-wide. (See Shaw Dep., at 51, 74); see Murray v. CTA, 252 F.3d 880, 888 (7th Cir. 2001) (no adverse employment action in part because employment actions were part of policy changes that affected large class of employees and were not directed at plaintiff personally). **[*37]**

n15 Upshur's retaliation claim, according to his deposition testimony, consists of the following acts of retaliation: (i) Upshur's African-American manager, Mike Goldsmith ("Goldsmith"), wrongly accused him of attendance policy violations in April 2003, only later to drop the matter without further action; and (ii) Goldsmith issued a written reprimand for improperly contacting a co-worker during a designated rest period. (See Upshur Dep., at 268-269, 449-450). Neither the accusation of attendance policy violations, nor the written reprimand, constitutes a materially adverse employment action. See Robinson, 120 F.3d at 1299-1301.

n16 Jones' retaliation claim, according to his deposition testimony, consists of the following acts of retaliation: (i) his African-American manager, McRae, issued a written reprimand to Jones for excessive telephone usage and for attendance problems; and (ii) a second manager, Pat Kerr, initiated an investigation concerning recrewing that did not result in discipline against Jones. (See Jones Dep., at 150-153, 228-232, 237). Because Jones has failed to argue, let alone demonstrate, how the written reprimands and the investigation altered the terms of his employment, neither incident constitutes an adverse employment action. See Weston, 251 F.3d at 430-431. **[*38]**

n17 Allen's retaliation claim, according to her deposition testimony, consists of the following acts of retaliation: (i) she was pulled out of one meeting to discuss work-related issues with Kates; and (ii) on the days she was absent, Kates redistributed her assignments to different clerks. (See Allen Dep., at 125-127, 141-143, 167). These incidents do not rise to the level of "adverse employment action" within the meaning of Title VII. See Robinson, 120 F.3d at 1299-1301.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In summary, each plaintiff has failed to carry his or her burden at the summary judgment stage of evidencing the existence of an adverse employment action. Plaintiffs' attempt to

raise a genuine issue of material fact by denying relevant paragraphs of defendant's Statement of Undisputed Facts through reference to plaintiffs' deposition testimony, without additional factual and legal analysis or supplemental evidence, fails as a matter of law to defeat defendant's motion for summary judgment on plaintiffs' retaliation claims. (See Pl. Br., at 6) ("plaintiffs deny most of defendant's claims regarding **[\*39]** the retaliation cause of action being pursued by each one"); see Fed. R. Civ. P. 56(e) (when party supports motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").

### 3. Plaintiffs failed to provide evidence that they were retaliated against because they engaged in protected activity.

Assuming *arguendo* that plaintiffs provided evidence to support the alleged adverse employment actions referenced in each plaintiff's deposition testimony, no plaintiff has put forth any evidence of causation to defeat summary judgment. No plaintiff makes any showing of a causal connection between protected activity and each adverse employment action, such as by demonstrating that the adverse action immediately followed the protected conduct, that a pattern of antagonism followed the protected activity, or that the adverse employment action was atypical or unduly severe. See, e.g., Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-286 (3d Cir. 2000) **[\*40]** (illuminating ways in which plaintiffs can demonstrate causal link to establish *prima facie* case of retaliation); Crompton, 305 F. Supp. 2d at 476. In fact, plaintiffs offer no *argument* as to how they have satisfied this causation element.

Furthermore, to the extent that plaintiffs rely upon their deposition testimony, without supporting argument or additional evidence, to establish the causation element, this testimony militates against plaintiff's position, highlighting the inability of each plaintiff to satisfy this element as a matter of law. For instance, Green fails to identify a single act of retaliation, either at her deposition or through her interrogatories. (See Green Dep., at 201). Upshur fails to put forth evidence that her African-American manager, Goldsmith, knew of her EEOC charge and that Goldsmith reprimanded plaintiff for excessive absenteeism as retaliation for this behavior. (See Upshur Dep., at 277-79; Pl. Response, at P 116). Jones concedes that the actions of his manager, McRae, who issued a written reprimand for excess telephone usage, and of his managers Pat Kerr and Bob Schmitt, who initiated an investigation against him in **[\*41]** 1998 or 1999 for failing to recrew a train, were based on personal dislike, rather than the filing of an EEOC charge in 2001. (See Jones Dep., at 213, 228-229, 231-232; Pl. Response to Defendant's Statement, at PP 104, 109-110). n18 Allen admits that she never complained of race discrimination to her manager and that the EEOC charge was filed on November 20, 2001, six months after she left the workplace; furthermore, Allen admits that Kates, the manager that allegedly retaliated against her, lacked knowledge of her complaints of discrimination. (See Allen Dep., at 120-125, 128-129, 161; Pl. Response to Defendant's Statement, at P 100); see Jones v. School District of Philadelphia, 198 F.3d 403, 415 (3d Cir. 1999) (affirming summary judgment for defendant on retaliation claim because plaintiff produced no evidence showing knowledge on part of defendant's employees of prior EEO filings); Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 424 n. 13 (D.N.J. 2003) ("plaintiff cannot make out prima facie case of causation without some evidence that decision-makers responsible for the alleged adverse employment action were aware of the plaintiff's **[\*42]** protected activity"). Scott fails to allege, let alone show, that the decision of manager John Humes ("Humes") to disqualify plaintiff from the crew management department on October 31, 2003 was retaliatory; furthermore, defendant presents affidavit testimony from Humes averring that he lacked knowledge of any EEOC charge or lawsuit filed by Scott against defendant. (See Humes Decl., attached as Ex. N to Def. Mot., at P 10); see also Jones, 198 F.3d at 415. Finally, Shaw admitted at his deposition that the primary allegations of retaliation, a denial of training and a shift change, were applicable to all members of the crew dispatch department working 8-hour jobs, thereby

undermining Shaw's unsupported conclusion that these job modifications were triggered by the filing of Shaw's EEOC complaint. (See Shaw Dep., at 47-48, 51, 73-74).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n18 Furthermore, the 1998 or 1999 investigation occurred well before Jones filed his EEOC charge in November 2001. (See EEOC Charge, attached as Ex. 24 to Jones Dep.).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*43]**

## 4. Conclusion

In summary, this Court finds that summary judgment is appropriate for defendant on each claim of retaliation. Shaw and Scott failed to exhaust their administrative remedies prior to bringing their retaliation claims, as the EEOC investigation regarding each plaintiff's charge concluded before the occurrence of the alleged acts of retaliation forming the basis for their claims. Furthermore, no plaintiff has made out a *prima facie* case of retaliation; indeed, each plaintiff fails to present evidence both of an adverse employment action and of a causal connection between the adverse employment action and protected activity.

## C. Failure to Promote Claims

HN12⚓To establish a *prima facie* case of a failure to promote claim, a plaintiff must prove that: (i) she belongs to a protected class; (ii) she applied for, was qualified for, and was rejected for a particular position; and (iii) after the rejection, the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications. See, e.g., McDonnel Douglas Corp., 411 U.S. at 802. Once a *prima facie* case is met, the burden shifts to the defendant **[*44]** to articulate a legitimate, non-discriminatory reason for refusing to promote plaintiff. See Delli Santi, 88 F.3d at 199. If met, the burden returns to the plaintiff "to point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

Plaintiffs Jones, Scott, Upshur, and Shaw bring failure to promote claims. (See Am. Compl., at PP 35-54). Defendant contends that it is entitled to summary judgment on plaintiffs' failure to promote claims as a matter of law because defendant has articulate legitimate, non-discriminatory reasons for hiring other candidates and because plaintiffs have introduced no evidence to disbelieve defendant's reasons or to show that racial discrimination was a factor in the promotion decision. (See Def. Br., at 23-32).

## 1. Jones

Jones alleges that he was denied two promotions during 2001 on the basis of his race: a promotion to **[*45]** the lead crew dispatcher in August 2001; and a promotion to customer service agent in November 2001. (See Am. Compl., at PP 35-49).

## A. Lead Crew Dispatcher Position

Defendant presents a legitimate, non-discriminatory reason for refusing to promote Jones to the position of lead crew dispatcher: Jones was not as qualified as other applicants. (See Def. Br., at 24-25). To support this position, defendant presents affidavit testimony from McRae, the manager responsible for interviewing and selecting candidates for the lead crew

dispatcher positions, that Jones was not selected because he had a lengthy disciplinary record, including two suspensions during the year prior to his application for the position. (See McRae Dep., attached as Ex. Y to Def. Mot., at P7). These suspensions involved attendance policy violations and missing work without notifying management. (See Jones Dep., at 165, 190-191). McRae further testifies that Wayne Mirante, a Caucasian employee who Jones identified during his deposition as being less qualified but who was nonetheless selected for the position, enjoyed a better disciplinary record, without any formal disciplinary actions taken against **[*46]** him during the two years prior to applying for the position. (See McRae Dep., at 7).

Jones fails to present any evidence from which a reasonable jury either could disbelieve this reason or could find intentional discrimination. First, Jones fails to provide evidentiary support for his conclusion, offered during his deposition testimony, that he was more qualified than Mirante for the position of lead crew dispatcher. Specifically, Jones fails to provide evidence to rebut McRae's testimony concerning his disciplinary record, fails to demonstrate that he had more experience and was more qualified than Mirante, and fails to show, however inferentially, that race played any role in the decision-making process. (See McRae Decl., at PP 7, 9). Second, although Jones cites the Rule 30(b)(6) deposition testimony of defendant's corporate designee, Sheila Davidson, who testified that she did not know if the person promoted over Jones was better qualified (See Davidson Dep., attached as Ex. E to Pl. Br., at 44-47), this evidence does not raise a genuine issue of material fact as to pretext; Davidson's lack of knowledge on this issue is not an "inconsistency" in defendant's proffered **[*47]** reason, as it fails to undermine or conflict with the deposition testimony of McRae, the person responsible for conducting the interview. See Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (demonstrating "inconsistency" is a difficult burden, requiring plaintiff to provide evidence that proffered reason was either a "post hoc fabrication or otherwise did not actually motivate the employment action") (internal citations omitted). Third, defendant provides deposition testimony, as well as supporting documentation, from Davidson indicating that at least two other African-American employees were offered lead crew dispatcher positions in 2001. (See Davidson Dep., attached as Ex. 12 to Def. Mot.).

Consequently, by failing to present any evidence to raise a genuine issue of material fact as to the legitimacy of defendant's reason for denying Jones' application for the position of lead crew dispatcher, Jones' claim fails as a matter of law.

## B. Customer Service Agent Position

A similar analysis applies to Jones' claim concerning the customer service agent position. Defendant presents a legitimate, non-discriminatory reason for refusing to promote plaintiff **[*48]** to this position, again arguing that plaintiff was not as qualified as other candidates because of his poor disciplinary record. (See Def. Br., at 26-27).

Jones has failed to present any evidence from which a reasonable jury either could disbelieve this reason or could find intentional discrimination. Jones failed to describe the factual basis behind his failure to promote claim in his interrogatory responses. (See Jones Interrogatory Responses, attached as Ex. S-1, S-2, S-3 to Def. Br., at PP 2, 14-15). More problematically, at his deposition, Jones denied being rejected for a customer service agent position in 2001. (See Jones Dep., at 243-245). Furthermore, although plaintiffs' opposition brief claims that plaintiff was more qualified than two white males who were also selected for the position, Jones fails to provide any evidence to support this legal conclusion. (See Pl. Jones Second Decl., at PP 12-13; Pl. Mot., at P 136). In particular, Jones fails to describe his own qualifications for the position, fails to illustrate why the two white male candidates were less qualified, and fails to present any evidence to suggest that race, as opposed to his past disciplinary **[*49]** record, motivated the decision to deny his application. Moreover, the Court notes that out of the 17 individuals selected for the position of customer service agent, nearly half were African-American. (See Davidson Dep., at 13; Applicant Log for Customer

Service Agent Position, attached as Ex. X-13 to Def. Br.).

**2. Scott**

Scott alleges that defendant's refusal to promote her to the position of lead crew dispatcher was motivated by racial discrimination. (See Am. Compl., at PP 35-39). Defendant presents a legitimate, non-discriminatory reason for refusing to promote plaintiff Scott to the position of lead crew dispatcher. (See Def. Br., at 25-26). McRae avers that Scott's application was denied because other candidates were more qualified and because plaintiff did not perform well during her interview. (See McRae Aff., at PP 8). Specifically, Mr. Mcrae testifies that Scott's interview displayed a lack of "thorough understanding of the responsibilities of the lead crew dispatcher and crew dispatcher positions, and the operation of the department." (Id., at P 8).

Scott fails to raise a genuine issue of material fact as to the validity of this reason. Throughout **[*50]** the discovery period, Scott failed to introduce the identity of any person selected to the position of lead crew dispatcher, let alone his or her qualifications. (See Scott Dep., at 155-158). Nor has Scott presented a comparative analysis of why she was more qualified than the applicants who were selected. In fact, Scott fails to present any evidence whatsoever to rebut defendant's non-discriminatory reason for denying plaintiff's promotion application. See Chauhan v. M. Alfieri Co., Inc., 897 F.2d 123, 128 (3d Cir. 1990) ("plaintiff must be able to adduce evidence, whether direct or circumstantial, from which a reasonable jury could conclude that the defendant's explanation is incredible"). Scott's unsupported conclusion during her deposition that she was more qualified than several unidentified applicants who may or may not have been selected for the position fails to raise a genuine issue of material fact as to pretext. See, e.g., McCadden v. Amtrak, 2002 U.S. Dist. LEXIS 22249, 2002 WL 32342483, at *5 (E.D. Pa. Oct. 29, 2002) (granting summary judgment on reverse discrimination claim in part because plaintiff's testimony that he was more qualified than **[*51]** candidate promoted to position, without more, fails to establish pretext); Mroczek v. Bethlehem Steel Corp., 126 F. Supp. 2d 379, 390 (E.D. Pa. 2001) (plaintiff's belief that she is a victim of discrimination, standing alone, does not meet burden of raising genuine issue of material fact as to pretext). Furthermore, the Court notes that several of the lead crew dispatcher positions were offered to African-American employees. (See Davidson Dep., attached as Ex. X, at 29). Accordingly, summary judgment in favor of defendant is appropriate.

**3. Shaw and Upshur**

In their brief in response to defendant's motion for summary judgment, Shaw and Upshur withdraw their failure to promote claims, stating that they were unable to uncover sufficient evidence to support such claims. (See Pl. Br., at 7). Accordingly, this Court grants summary judgment to defendant on these claims.

**D. Conclusion** n19

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 Because this Court has granted summary judgment on defendant's substantive arguments concerning plaintiffs' claims, this Court need not reach defendant's additional, procedural argument that Green's deposition precludes a finding that her allegations in the amended complaint relate back to the original complaint, thereby rendering her instant claims time-barred. (See Def. Br., at 32-33).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*52]**

A0124

For the preceding reasons, this Court grants summary judgment to defendant on plaintiffs' hostile work environment, retaliation, and failure to promote claims. An appropriate Order follows.

**ORDER**

AND NOW, this 6th day of September 2005, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 61), and Plaintiff's response thereto (Doc. No. 64), it is hereby ORDERED as follows:

1. Defendant's Motion (Doc. No. 61) is GRANTED.

2. Judgment is entered in favor of Defendant.

3. The Clerk of Court shall mark this action closed for statistical purposes.

BY THE COURT:

/s/

Legrome D. Davis, J.

Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 19624**
View: Full
Date/Time: Friday, April 28, 2006 - 10:00 AM EDT

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
🅠 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✛ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

 LexisNexis®   About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**A0125**