Source: Legal > / . . . / > PA Federal District Courts
Terms: name(wyeth) and date geq (04/26/2001)  (Edit Search | Suggest Terms for My Search)
Focus: eeoc and date geq (04/26/2001)  (Exit FOCUS™)

✔Select for FOCUS™ or Delivery
☐

*2004 U.S. Dist. LEXIS 4382, \**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, and DANITA KENT-BYRD, Plaintiff-Intervenor, v. WYETH PHARMACEUTICAL, Defendant.

CIVIL ACTION NO. 03-2967

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2004 U.S. Dist. LEXIS 4382

**March** 11, 2004, Decided

**DISPOSITION:** **[\*1]** Defendant's motion for summary judgment granted in part and denied in part.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff Equal Employment Opportunity Commission (**EEOC**) filed suit against defendant employer alleging violations of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. Intervenor employee filed a complaint raising the same claims as the **EEOC** and raising a separate claim of retaliation. The employee also asserted her claims under the Pennsylvania Human Relations Act. The employer moved for summary judgment.

**OVERVIEW:** After being denied a promotion, the employee complained to the employer that she should have been promoted. The employee filed an internal Assurance of Fair Treatment complaint with the employer, alleging that she was denied the promotion because of her race. After an investigation, a case summary was prepared and the employer informed the employee that there was no merit to her claims and that the promotion decisions were appropriate. The employee alleged that the employer began to retaliate against her for making discrimination allegations. Specifically, the employee claimed that her immediate supervisor started to criticize her for arriving late to work. The court found that the employee failed to present any evidence that she suffered an adverse action after or contemporaneous with her protected employee action. The court reasoned that oral reprimands, without anything more, were not enough to constitute an adverse employment action. Next, regarding the employee's discrimination claim, the court found that the employee had satisfied her burden of showing that genuine issues of fact existed regarding "pretext."

**OUTCOME:** The employer's motion for summary judgment was granted in part, as to the retaliation claim, and denied in part, as to the discrimination claim.

**CORE TERMS:** summary judgment, promotion, reprimands, pretext, genuine, pay increase, nondiscriminatory reason, prima facie case, adverse action, issues of fact, matter of law, raising, confronted, rating, protected activity, causal connection, material fact, contemporaneous, retaliated, proffered, credence, discrimination claim, retaliation, retaliatory, supervisor, deposition, tardiness, discovery, minutes

A0126

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Evidence

Civil Procedure > Summary Judgment > Standards > Legal Entitlement

Civil Procedure > Summary Judgment > Standards > Materiality

**HN1** A motion for summary judgment will be granted where all of the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Since a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion.  More Like This Headnote

Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > Summary Judgment > Standards > General Overview

**HN2** The ultimate question in determining whether a motion for summary judgment should be granted is whether reasonable minds may differ as to the verdict. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities

Labor & Employment Law > Discrimination > Retaliation > General Overview

**HN3** In order to establish a prima facie case of illegal retaliation, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation > General Overview

**HN4** In the context of a retaliation claim, oral reprimands, without anything more, are not enough to constitute an adverse employment action.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Labor & Employment Law > Discrimination > Actionable Discrimination

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

**HN5** When a plaintiff alleges discrimination regarding the denial of a promotion, the plaintiff must carry the burden of establishing a prima facie case. Thus, the plaintiff must establish that he or she: (1) belongs to a protected category; (2) applied for and was qualified for a job in an available position; (3) was rejected; and (4) after the rejection the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the position. If the plaintiff meets these requirements, then the burden shifts to the employer to articulate a

**A0127**

legitimate, nondiscriminatory reason for the decision to deny plaintiff the promotion. If the employer meets its burden, then the plaintiff must produce evidence from which a reasonable factfinder could conclude either that the employer's proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination. More Like This Headnote

**COUNSEL:** For EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff: TERRENCE R. COOK, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, PHILADELPHIA, PA. JACQUELINE H. MCNAIR, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, PHILADELPHIA, PA. JUDITH A. O'BOYLE, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, PHILADELPHIA, PA.

For DANITA KENT BYRD, Intervenor Plaintiff: CARMEN L. RIVERA MATOS, LAW OFFICES OF CARMEN R. MATOS, DOYLESTOWN, PA.

For WYETH PHARMACEUTICAL, Defendant: ERIN M. O'NEILL, REED SMITH LLP, PHILADELPHIA, PA. JOHN E. QUINN, REED SMITH, LLP, PHILADELPHIA, PA.

**JUDGES:** RONALD L. BUCKWALTER, S.J.

**OPINIONBY:** RONALD L. BUCKWALTER

**OPINION: MEMORANDUM**

BUCKWALTER, J.

March 11, 2004

Presently before the Court is Defendant Wyeth Pharmaceutical's Motion for Summary Judgment, Plaintiff Equal Employment Opportunity Commission's and Plaintiff-Intervenor Danita Kent-Byrd's Opposition thereto and Defendant's Reply Brief in Support of its Motion. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

## I. BACKGROUND

During the summer of 2001, Defendant Wyeth Pharmaceutical ("Wyeth") [*2] had two vacant positions for Senior Credit Analysts in its Treasury, Credit and Accounts Receivable Department ("Credit Department"). Wyeth decided to fill those positions by promoting two internal Credit Analysts. In September 2001, after reviewing the credentials of every Credit Analyst within the Credit Department, David Nemeth - the head of the Credit Department - selected two candidates for the promotions - Michael Lorek (Caucasian) and Michelle Clegg (Caucasian). Plaintiff-Intervenor Kent-Byrd ("Kent-Byrd") - an African-American - is a Credit Analyst and was considered for the promotion, but Nemeth ultimately decided not to choose her.

After being denied the promotion, Kent-Byrd complained to Wyeth that she should have been promoted over Clegg. Kent-Byrd filed an internal Assurance of Fair Treatment complaint with Wyeth, alleging that she was denied the promotion because of her race. After an investigation, a case summary was prepared and Wyeth informed Kent-Byrd that there was no merit to her claims and that the promotion decisions were appropriate.

Kent-Byrd alleges that in or around February, 2002, Wyeth began to retaliate against her for making discrimination allegations. [*3] Specifically, Kent-Byrd claims that her immediate supervisor - Brad Lucas - started to criticize her for arriving late to work.

On or around May 7, 2003, Plaintiff Equal Employment Opportunity Commission ("EEOC")

filed a complaint in this Court, alleging violations of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. On or around August 6, 2003, Kent-Byrd filed an intervenor complaint raising the same claims as **EEOC** and raising a separate claim that Wyeth retaliated against her for filing an internal discrimination complaint. Kent-Byrd also asserted her claims under the Pennsylvania Human Relations Act.

## II. STANDARD OF REVIEW

HN1 A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Since a [*4] grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962).

HN2 The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## III. DISCUSSION

### A. Retaliation Claim

Kent-Byrd alleges that Wyeth retaliated against her after she filed an internal complaint alleging racial discrimination. Specifically, Kent-Byrd claims that "Defendant subjected Ms. Kent-Byrd to retaliatory actions by the Regional Credit Manager, Brad Lucas, when he confronted her about her arrival and departure time." (Intervenor Compl. P27.) "Ms. Kent-Byrd admitted to occasionally being 5-10 minutes late but Ms. Kent-Byrd was the only employee confronted on this [*5] matter, although she was not the only employee who arrived a few minutes late to work." (Id.)

HN3 In order to establish a prima facie case of illegal retaliation, a "plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Fogleman v. Mercy Hospital, Inc., 283 F.3d 561, 567-68 (3d Cir. 2002).

Kent-Byrd has shown that she engaged in a protected employee activity - filing an internal Assurance of Fair Treatment Complaint. Kent-Byrd has not, however, presented any evidence that she suffered an adverse action after or contemporaneous with her protected employee action. Kent-Byrd's sole allegation is that in February, 2002 her supervisor verbally confronted her regarding her tardiness. (Intervenor Compl. P27.) Kent-Byrd admitted, however, that she never suffered any adverse employment action. During her deposition, Kent-Byrd testified as follows:

> Q: Now, as a result of Brad Lucas speaking with you in the beginning of February 2002 regarding your attendance, [*6] did you receive any form of disciplinary action?
>
> A: No

A0129

(Kent-Byrd Tr. at 127-28.)

HN4 Oral reprimands, without anything more, are not enough to constitute an adverse employment action. Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) (holding that two written reprimands merely placed in an employee's personnel file do not materially change the terms and conditions of employment to create an adverse employment action). Plaintiff has not shown any evidence that she suffered any type of adverse employment action, and Plaintiff has not shown that genuine issues of fact exist for trial. Accordingly, summary judgment is granted to Wyeth regarding this claim. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Kent-Byrd has also failed to establish causation. Kent-Byrd admitted during her deposition that she was repeatedly late for work. In fact, during January, 2002 - the month before her oral reprimands - Kent-Byrd admitted that she was likely late for work over 2/3 of the days. (Def.'s Br. at 28; See Intervenor Compl. P27.) Kent-Byrd has not presented any evidence of a causal connection between the oral reprimands and her discrimination claim. Rather, the evidence shows that the reprimands were a direct result of Kent-Byrd's repeated tardiness.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*7]

In her opposition brief, Plaintiff alleges for the first time that she suffered additional retaliatory adverse employment actions. Specifically, Plaintiff alleges the following: (1) her supervisor criticized her work performance; (2) she received a rating of "3" which stands for "Solid Performer" during her performance review for 2003 n2; (3) she received a smaller raise at the end of 2003 than she did in 2002 n3; and (4) she was removed from working on a large account.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Kent-Byrd began working at Wyeth in 1998 and received a rating of "3" or "Solid Performer" every year of her employment. It is undisputed that her rating did not decline after she complained of discrimination.

n3 Despite receiving a raise at the end of 2003, Kent-Byrd alleges that she suffered an adverse employment action because her pay increase was .05% lower than her pay increase from the year before. Kent-Byrd received a 2.50% increase for 2003 compared to a 2.55% increase for 2002. (Def.'s Reply Br. at 19.) Kent-Byrd has supplied no authority stating that a pay increase is actually an adverse employment action. Regardless, the Court does not find that a minuscule decline (.05%) in pay increase amounts to an adverse employment action.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*8]

Kent-Byrd's bald allegations, however, fail as a matter of law because she cannot assert new claims for the first time in her opposition brief. None of these claims were included in her **EEOC** charge or her complaint in this Court. Kent-Byrd had ample opportunity to amend her complaint but failed to do so. Furthermore, Wyeth went through the entire discovery period without knowing of these claims. Discovery is now closed, and Wyeth cannot be expected to defend against claims that were never raised prior to Kent-Byrd's opposition brief.

Additionally, Kent-Byrd's new claims would fail regardless of her failure to properly raise them. Kent-Byrd has failed to show any evidence or authority that would enable her to survive summary judgment. Kent-Byrd's new allegations are unsupported by evidence, and Kent-Byrd has failed to show that any genuine issues of fact exist for trial.

### B. Discrimination Claim

HN5 When a plaintiff alleges discrimination regarding the denial of a promotion, the plaintiff must carry the burden of establishing a prima facie case. "Thus, the plaintiff must establish that he or she (1) belongs to a protected category; (2) applied for and was qualified for a job in [*9] an available position; (3) was rejected; and (4) after the rejection the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the position." Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997). If the plaintiff meets these requirements, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the decision to deny plaintiff the promotion. Id. If the employer meets its burden, "then the plaintiff must produce evidence from which a reasonable factfinder could conclude either that the [employer's] proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination." Id.

In the instant case, the parties do not dispute whether Kent-Byrd can establish a prima facie case or whether Wyeth offered a legitimate, nondiscriminatory reason for its decision. Rather, the parties dispute whether Kent-Byrd can establish that Wyeth's proffered legitimate nondiscriminatory reason is pretext for discrimination. In an effort to show pretext, Kent-Byrd spends a significant portion of her brief raising a series of issues [*10] that she argues shows Wyeth's proffered reason is "inconsistent, implausible and unworthy of credence." (Pl.'s Br. at 23.)

In analyzing each of the issues raised by Kent-Byrd, the Court cannot find as a matter of law that Kent-Byrd proved pretext or that Wyeth proved the absence of pretext. The Court does find, however, that Kent-Byrd has satisfied her burden of showing that genuine issues of fact exist regarding "pretext." Accordingly, summary judgment cannot be granted to Wyeth concerning this issue.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part. An appropriate order follows.

### ORDER

AND NOW, this 11th day of March, 2004, upon consideration of Defendant Wyeth Pharmaceutical's Motion for Summary Judgment (Docket No. 13), Plaintiff Equal Opportunity Commission's and Plaintiff-Intervenor Danita Kent-Byrd's Opposition thereto (Docket No. 15) and Defendant's Reply Brief (Docket No. 16), it is hereby **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. With regard to Plaintiff-Intervenor's retaliation claims, Defendant's motion is [*11] **GRANTED** and judgment in entered on behalf of Defendant and against Plaintiff-Intervenor. With regard to all other claims, Defendant's motion is **DENIED.**

BY THE COURT:

RONALD L. BUCKWALTER, S.J.

A0131

Source: Legal > / . . . / > **PA Federal District Courts**
Terms: name(wyeth) and date geq (04/26/2001)  (Edit Search | Suggest Terms for My Search)
Focus: **eeoc and date geq (04/26/2001)**  (Exit FOCUS™)
View: Full
Date/Time: Wednesday, April 26, 2006 - 2:42 PM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
◨ - Questioned: Validity questioned by citing refs
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

  About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

A0132

Get a Document - by Party Name - SARKO
Case 1:05-cv-00274-GMS    Document 42-7    Filed 04/28/2006    Page 8 of 15
Page 1 of 8

Source: Legal > / . . . / > PA Federal District Courts
Terms: name(sarko) and date geq (04/26/2001)  (Edit Search | Suggest Terms for My Search)

*2004 U.S. Dist. LEXIS 22194, ***

EDWARD J. **SARKO**, Plaintiff, v. WILLIAM J. HENDERSON, POSTMASTER GENERAL OF THE UNITED STATES, Defendant.

CIVIL ACTION NO. 2:03-cv-03473-LDD

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2004 U.S. Dist. LEXIS 22194

**October** 29, 2004, Decided
**October** 29, 2004, Filed, Entered

**DISPOSITION:** Defendant's motion for summary judgment granted. Plaintiff's complaint dismissed with prejudice.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff postal employee brought suit against defendant postmaster, alleging violation of the Age Discrimination in Employment Act of 1967 (ADEA) and violation of Title VII of the Federal Civil Rights Act of 1991 (Title VII). The postmaster moved for summary judgment, pursuant to Fed. R. Civ. P. 56.

**OVERVIEW:** The employee was accused of improper sexual conduct, was placed on off-duty status, and subsequently terminated. The employee was reemployed and awarded back pay after arbitration of a union grievance found a procedural flaw with the manner in which the employee's termination had been handled. The employee then brought suit, but the postmaster argued that the reason for terminating the employee was not discriminatory animus, but a legitimate credibility determination that the employee had engaged in improper sexual conduct. Moreover, the postmaster asserted that the employee did not suffer an adverse employment action because he was reinstated and received back pay. The court agreed, because there was no evidence that the terms and conditions of employment had been altered; the employee did not lose salary, benefits, or seniority rights, nor was he reinstated to a different position, demoted in title, or scheduled to work a different shift or fewer hours. In addition, there was no evidence that the employee's supervisors were aware, let alone motivated by, his age. Finally, the postmaster's well-supported credibility determination did not give rise to an inference of gender bias.

**OUTCOME:** The postmaster's motion for summary judgment was granted.

**CORE TERMS:** summary judgment, prima facie case, termination, reinstatement, reinstated, post office, credibility determination, progressive discipline, employment decision, protected class, discriminatory, terminating, factfinder, pretext, sexual conduct, terminated, employment discrimination, nondiscriminatory reason, significant change, sexual harassment, burden of proof, prima facie, preponderance, supervisors, non-movant, reputation, pretextual, tangible, altered, prong

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

A0133

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview 

Civil Procedure > Summary Judgment > Standards > General Overview 

Civil Procedure > Summary Judgment > Supporting Materials > Affidavits

HN1 In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Only facts that may affect the outcome of a case are material. All reasonable inferences from the record are drawn in favor of the nonmovant. Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the nonmovant must then establish the existence of each element on which it bears the burden of proof. A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Federal & State Interrelationships 

Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Amendments 

HN2 The same general standards and analyses are applicable to claims under Title VII of the Civil Rights Act of 1991 and the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 621 et seq. Under the framework for claims of employment discrimination, the burden of proof shifts as follows: (1) an employee must establish a prima facie case by a preponderance of the evidence; (2) the employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision; and (3) the employee may then demonstrate by a preponderance of the evidence that the employee's stated reason is a mere pretext for illegal discrimination. More Like This Headnote

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview 

HN3 An employee must first establish a prima facie case of employment discrimination by showing (1) that he was a member of a protected class; (2) that he was qualified for the job he held; (3) that he was subject to an adverse employment action despite being qualified; and (4) that the circumstances of the employee's rejection or replacement created an inference of discrimination. The prima facie test is a flexible one, tailored to fit the context in which it is applied. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof > General Overview 

HN4 For purposes of a prima facie case under the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 621 et seq., the fourth element contemplates an age difference of at least five years. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > General Overview 

Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > General Overview 

A0134

Labor & Employment Law > Wrongful Termination > Remedies > Backpay

**HN5** A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Remedies > Backpay & Frontpay

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Amendments

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Equitable Relief

**HN6** One of the ways Title VII of the Civil Rights Act of 1991 and the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 621 et seq., compensate successful plaintiffs is by awarding reinstatement with back pay. 42 U.S.C.S. § 2000e-5(g); 29 U.S.C.S. § 626(b). More Like This Headnote

Labor & Employment Law > Discrimination > Actionable Discrimination

**HN7** Written reprimands do not constitute tangible, adverse employment action where other terms and conditions of employment are not altered. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Proof > Circumstantial Evidence

Labor & Employment Law > Discrimination > Racial Discrimination > Employment Practices > Discharges

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

**HN8** In order for a plaintiff to satisfy the fourth prong of the prima facie case of employment discrimination he must establish some causal nexus between his membership in a protected class and his termination. More Like This Headnote

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

**HN9** After a plaintiff establishes a prima facie case of employment discrimination, the burden of production shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision. More Like This Headnote

Civil Procedure > Summary Judgment > Evidence

Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview

**HN10** To survive summary judgment on an employment discrimination claim, a plaintiff employee has to submit evidence from which a factfinder could reasonably either (1) disbelieve the defendant employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Pretext is not demonstrated by showing simply that the employer was mistaken. Instead, the court examines the record for evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons. More Like This Headnote

A0135

**COUNSEL:** **[\*1]** For EDWARD J. SARKO, Plaintiff: DONALD P. RUSSO, DONALD P. RUSSO, ESQUIRE, BETHLEHEM, PA; NURIA SJOLUND, BETHLEHEM, PA.

For WILLIAM J. HENDERSON, POSTMASTER GENERAL OF THE UNITED STATES: BARBARA ROWLAND, U.S. ATTORNEY'S OFFICE, PHILADELPHIA, PA.

**JUDGES:** Legrome D. Davis, J., wrote the order.

**OPINION: MEMORANDUM AND ORDER**

**MEMORANDUM**

Presently before this Court are the Motion for Summary Judgment filed by Defendants on April 15, 2004 (Doc. No. 11) and the Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment filed by Plaintiff on May 13, 2004 (Docs. No. 14, 15).

**I. Factual Background and Procedural History**

Plaintiff is currently employed as a flexible clerk by the United States Postal Service in Emmaus, Pennsylvania. Def.'s Mot. S.J. at 2, Sarko Dep. Tr. at 8-9. On May 24, 2001, Plaintiff was placed on off-duty status without pay in connection with an incident that occurred at the Perkiomenville post office on May 17, 2001. Pl.'s Compl. at 1-2, Def.'s Mot. S.J. at 2. Plaintiff, who was working at the Perkiomenville post office on a temporary basis, Def.'s Mot. S.J. at 2, Sarko Dep. Tr. at 10, was accused of improper sexual conduct occurring **[\*2]** on that date by a female rural carrier, Carla Mokluk, who was also assigned to the Perkiomenville post office. Def.'s Mot. S.J. at 2, Sarko Dep. Tr. at 13, 15. As a result of Ms. Mokluk's accusation, made on May 21, 2001, Plaintiff was placed on off-duty status without pay, Def.'s Mot. S.J. at 2, Laughlin Dep. Tr. at 29, and subsequently terminated from the Postal Service several months later. Def.'s Mot. S.J. at 6, Laughlin Dep. Tr. at 42. More than a year later, Plaintiff was returned to his status as a clerk at the Emmaus post office and awarded back pay after arbitration of a union grievance found a procedural flaw with the manner in which Plaintiff's termination had been handled. Def.'s Mot. S.J. at 2; see United States Postal Serv. and Am. Postal Workers Union, ALF-CIO, Case Nos. C98C-4C-D01264275 and C98C-4C-D01264277 (Nov. 14, 2004) (Loeb, Arb.).

Subsequent to these events, Plaintiff filed a Complaint (Doc. No. 1) against the Postmaster General on June 4, 2003, alleging violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and violation of Title VII of the Federal Civil Rights Act of 1991 ("Title VII"). Defendant then moved for Summary Judgment on April 15, 2004 (Doc. **[\*3]** No. 15). In his Motion, Defendant argues that his reason for terminating Plaintiff was not discriminatory animus, but the Postal Service's legitimate belief that Plaintiff engaged in improper sexual conduct. Def.'s Mot. S.J. at 11. Moreover, Defendant asserts that Plaintiff did not suffer an adverse employment action because he was reinstated and received back pay. Id. at 16. In his response (Docs. No. 14, 15), Plaintiff submits that his termination without any progressive discipline is evidence that Defendant's stated motive was pretextual, Pl.'s Mem. in Opp. at 16, and that he did suffer an adverse employment action, despite his reinstatement with back pay, because of the harm to his reputation among his co-workers. Pl.'s Mem. in Opp. at 15, 16.

**II. Standard of Review**

*HN1* In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); [*4] Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986). Only facts that may affect the outcome of a case are "material." Anderson, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505. All reasonable inferences from the record are drawn in favor of the non-movant. See id. at 256.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. See J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)), cert. denied, 499 U.S. 921, 113 L. Ed. 2d 246, 111 S. Ct. 1313 (1991). A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. Anderson, 477 U.S. at 248; Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); [*5] Woods v. Bentsen, 889 F. Supp. 179, 184 (E.D. Pa. 1995).

### III. Analysis

HN2 The same general standards and analyses are applicable to Plaintiff's Title VII and ADEA claims. Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000)).

Under the framework for claims of employment discrimination, the burden of proof shifts as follows: (1) Plaintiff must establish a prima facie case by a preponderance of the evidence; (2) Defendant then must offer a legitimate nondiscriminatory reason for the adverse employment decision; and (3) Plaintiff may then demonstrate by a preponderance of the evidence that Defendant's stated reason is a mere pretext for illegal discrimination. Sarullo, 352 F.3d at 797; Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) (citations omitted).

### A. Plaintiff's Prima Facie Case of Discrimination

HN3 Plaintiff must first establish a prima facie case by showing (1) that he was a member of a [*6] protected class; (2) that he was qualified for the job he held; (3) that he was subject to an adverse employment action despite being qualified; and (4) that the circumstances of Plaintiff's rejection or replacement create an inference of discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 & n. 6, (1981) n1; Sarullo, 352 F.3d at 797 n. 6. The prima facie test is a flexible one, tailored to fit the context in which it is applied. Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 HN4 For purposes of a prima facie ADEA case, the fourth element contemplates an age difference of at least five years. See Fakete v. Aetna, Inc., 152 F. Supp. 2d 722, 735 (E.D. Pa. 2001).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The first two elements of Plaintiff's prima facie case are not disputed. He is a man and more than forty years old. Pl.'s Compl. at 1-2. He is therefore a member of a protected class under

A0137

Get a Document - by Party Name - SARKO
Case 1:05-cv-00274-GMS   Document 42-7   Filed 04/28/2006   Page 13 of 15
Page 6 of 8

Title VII (his gender) and the ADEA **[*7]** (his age), and his qualifications are not in dispute. However, Defendant contends that Plaintiff has not suffered an adverse employment action because he was reinstated with back pay following arbitration.

The Supreme Court has held that <sup>HN5</sup>"[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998). As of the filing of this action, Plaintiff's removal had been reversed as a result of the grievance process and he has been reinstated by an arbitration award with back pay and benefits. Def.'s Mot. S.J. at 17; United States Postal Serv. and Am. Postal Workers Union, ALF-CIO, Case Nos. C98C-4C-D01264275 and C98C-4C-D01264277 (Nov. 14, 2004) (Loeb, Arb.); USPS Back Pay Decision/Settlement Worksheet for Sarko, Edward J.. Plaintiff contends, without citing any relevant authority, that despite his reinstatement with back pay and benefits, his earlier termination continues to constitute an adverse employment decision **[*8]** and that Plaintiff's mental anguish is sufficient to maintain a claim of adverse employment action because he has not been "made whole." Pl.'s Mem. at 14-16.

Subsequent to his reinstatement, however, Plaintiff can no longer lay claim to an adverse employment action. Notably, <sup>HN6</sup>one of the ways Title VII and the ADEA compensate successful Plaintiffs is by awarding reinstatement with back pay. See 42 U.S.C. § 2000e-5 (g); 29 U.S.C. § 626(b). Moreover, there is no evidence that the terms and conditions of Plaintiff's employment have been altered--Plaintiff did not lose salary, benefits, or seniority rights, nor was he reinstated to a different position, demoted in title, or scheduled to work a different shift or fewer hours. Therefore, Plaintiff cannot establish a prima facie case of employment discrimination. See Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) <sup>HN7</sup>(finding that written reprimands did not constitute tangible, adverse employment action where other terms and conditions of employment were not altered).

Further, even if, as Plaintiff contends, reinstatement did not "undo" his termination or if perceived **[*9]** damage to his reputation was sufficient to constitute an adverse employment action, Pl.'s Mem. in Opp. at 15-16, Plaintiff still fails to establish prong four of the prima facie case with respect to his age discrimination claim: that his employer's actions raise an inference of discrimination under the ADEA. Sarko's evidence of age discrimination consists solely of his assertion that he was replaced by younger person after he was terminated and before he was reinstated. In Sarullo v. United Service Postal Service the Third Circuit held that the plaintiff could not establish an inference of age or race discrimination where he was terminated because of a drug arrest and there was no evidence in the record that his supervisors were aware of his age or race. 352 F.3d 789, 791, 798-99 (3d Cir. 2003). The Third Circuit stated in Sarullo that<sup>HN8</sup> in order for the plaintiff to satisfy the fourth prong of the prima facie case "he must establish some causal nexus between his membership in a protected class and [his termination]." 352 F.3d at 798. Likewise, in the instant case Plaintiff Sarko's termination was the proximate result of the sexual harassment complaint **[*10]** made by Ms. Mokluk. There is no evidence in the record that Plaintiff's supervisors were aware, let alone motivated by, his age. Moreover, Plaintiff has offered no evidence to counter Defendant's assertion that no individual employee filled Plaintiff's position with the Emmaus post office. Def.'s Mot. S.J. at 15; Laughlin Dep. Tr. at 33. Mr. Sarko has failed to demonstrate the necessary causal connection with regard to his suit under the ADEA. For this reason, Plaintiff's claim under the ADEA is DISMISSED.

### B. Defendant's Non-Discriminatory Reason

Finally, even if Plaintiff's could make out a prima facie case of gender discrimination under Title VII, it still would not survive summary judgment as Plaintiff has failed to establish that Defendant's non-discriminatory reason for terminating plaintiff was pretextual.

A0138

*HN9* After a Plaintiff establishes a prima facie case, "'the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the [adverse employment decision].'" Showalter v. University of Pittsburgh Med. Ctr., 190 F.3d 231, 235 [*11] (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3rd Cir. 1997); see also Smith v. Borough of Wilkinsburg, 147 F.3d 272, 278 (3rd.Cir. 1998). Sarko does not dispute that Mr. Laughlin was the appropriate person to terminate Plaintiff. Mr. Laughlin, after conducting a full and fair investigation, concluded that terminating Plaintiff was in the best interest of the Postal Service because he could not expose other female employees of the Postal Service to an individual whom Mr. Laughlin believed had engaged in improper sexual conduct. Def.'s Mot. S.J. at 12; Laughlin Dep. Tr. at 30. Inherent in this decision is the amply supported credibility determination made by Mr. Laughlin that Ms. Mokluk was telling the truth. See Def.'s Mot. S.J. at 11-12. As Plaintiff himself stated, "in essence, a credibility determination was the reason for Sarko's termination . . . ." Pl.'s Mem. in Opp. at 15. Nothing in the record raises doubts about the propriety of the means Mr. Laughlin used to make his determination, nor is there any evidence of an underlying, discriminatory motivation.

*HN10* To survive summary judgment Plaintiff would still have to submit [*12] evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Pretext is not demonstrated by showing simply that the employer was mistaken. Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995) (citing Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 531 (3d Cir.1992), cert. denied, 510 U.S. 826, 126 L. Ed. 2d 56, 114 S. Ct. 88 (1993)). Instead, the Court examines the record for "evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." Id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir.1993)).

In the instant case, the only evidence Plaintiff presents to establish pretext is (1) the fact that progressive discipline was not utilized, Pl.'s Mem. in Opp. at 16-18, and [*13] (2) that Defendant believed Ms. Mokluk over Plaintiff. Sarko Dep. Tr. at 72. Neither of these reasons is sufficient for a factfinder to reasonably conclude that Defendant had an improper motive. As to the former, there is no evidence that progressive discipline was either a formal program or was required in the face of allegations as serious as sexual harassment. As to the latter, a well-supported credibility determination does not give rise to an inference of gender bias. Plaintiff has not shown that "the Defendant's proffered reasons are weak, incoherent, implausible, or so inconsistent that 'a reasonable factfinder could rationally find them unworthy of credence.'" Sarullo v. United States Postal Serv., 352 F.3d 789, 800 (3d Cir. 2003) (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997)). Accordingly, Plaintiff's claim of sex discrimination under Title VII must be DISMISSED.

### IV. Conclusion

For all these reasons, Defendant's Motion for Summary Judgment is GRANTED. An appropriate order follows.

### ORDER

AND NOW, this 28th day of October 2004, upon consideration of Motion for Summary Judgment filed [*14] by Defendant on April 15, 2004 (Doc. No. 11) and the Response and Memorandum in Opposition to the Motion for Summary Judgment filed by Plaintiff on May 13, 2004 (Doc. Nos. 14, 15), it is hereby ORDERED that Defendant's Motion for Summary

Judgment is GRANTED. Plaintiff's Complaint is DISMISSED with prejudice.

BY THE COURT:

Legrome D. Davis, J.

Source: Legal > / . . . / > **PA Federal District Courts** 
Terms: **name(sarko) and date geq (04/26/2001)**  (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Wednesday, April 26, 2006 - 2:44 PM EDT

LexisNexis® About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

A0140

http://www.lexis.com/research/retrieve?_m=bf5ed276aa14cb2e5b8fe5050b91715f&csvc=...    4/26/2006