Service: Get by LEXSEE®
Citation: 2001 us dist lexis 5531

*2001 U.S. Dist. LEXIS 5531, \**

EUGENE A. URBAN v. WILLIAM J. HENDERSON, POSTMASTER GENERAL, UNITED STATES
POSTAL SERVICE

CIVIL ACTION NO. 99-4244

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2001 U.S. Dist. LEXIS 5531

April 4, 2001, Decided
April 5, 2001, Filed, Entered

**DISPOSITION: [\*1]** Defendant's motion for summary judgment (Document No. 16)
GRANTED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff postal employee filed a pro se complaint against
defendant federal Postmaster General, alleging defamation and retaliation for refusing to
sign an agreement, for exercising his First Amendment rights in filing a lawsuit and a
stress and anxiety claim, and for filing a complaint with the Equal Employment
Opportunity Commission. Defendant moved for summary judgment.

**OVERVIEW:** The court concluded that plaintiff had failed to establish a prima facie case of
retaliation under Title VII of the Civil Rights Act of 1964 because he was eventually paid
the bonus to which he claimed he was entitled, including interest. Thus, he had suffered
no injury. Moreover, there was no causal connection between plaintiff's filing of a
complaint with the Equal Employment Opportunity Commission (EEOC) and his delay in
receiving the bonus because a supervisor's initial decision to delay the bonus was made
prior to the filing of the EEOC complaint. The defamation cause of action was dismissed
because plaintiff failed to submit the claim to defendant within two years as required by
the Federal Tort Claims Act. Plaintiff failed to exhaust his administrative remedies on his
First Amendment and refusal to sign an agreement claims because there was no evidence
that he had sought corrective action from the Office of Special Counsel or the Merit
Systems Protection Board.

**OUTCOME:** Motion for summary judgment was granted.

**CORE TERMS:** bonus, retaliation, First Amendment, administrative remedies, conspiracy
claim, deposition, summary judgment, retaliated, defamation claim, false information,
memorandum, corrective action, judicial review, cause of action, regulation, accrual, initially
denied, defamation, conspiracy, lawsuit, reasonable jury, personnel, redress,
administratively, communicated, exhausted, summary judgment motion, comprehensive
scheme, protected activity, federal employees

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Summary Judgment > Standards > Appropriateness 🔖

Civil Procedure > Summary Judgment > Standards > Legal Entitlement 🔖

**A0148**

Civil Procedure > Summary Judgment > Standards > Materiality 

HN1⚓ Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence to permit a reasonable jury to return a verdict for the non-moving party. An issue of fact is material only if it might affect the outcome of the suit under the governing law. Credibility determinations are not appropriately made by a judge in summary judgment but must be left for a jury. Indeed, the evidence contained in the record is to be viewed in the light most favorable to the non-moving party. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants 

HN2⚓ The moving party bears the initial burden of identifying for the court the basis for its summary judgment motion and identifying the portions of the record it believes demonstrate the absence of a genuine issue of material fact. Once the moving party has done this, the non-moving party must produce evidence such that a reasonable jury could find for that party, in order to avoid the entry of summary judgment against it. The non-moving party must respond with specific factual allegations demonstrating that there is a genuine issue for trial. Conclusory factual allegations will not suffice. Finally, when considering how a reasonable jury would rule, the court should apply the evidentiary standard that the jury would use at trial. More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Unfair Labor Practices > Interference With Protected Activities

Labor & Employment Law > Discrimination > Retaliation > General Overview

HN3⚓ A prima facie case of retaliation under Title VII of the Civil Rights Act of 1964 has the following elements: (1) the plaintiff engaging in protected activity; (2) the employer taking an adverse employment action against the plaintiff; and (3) a causal connection between the plaintiff's participation in protected activity and the adverse employment action. More Like This Headnote

Administrative Law > Sovereign Immunity

Civil Procedure > Federal & State Interrelationships > Sovereign Immunity > State Immunity

Governments > Federal Government > U.S. Postal Service

HN4⚓ Section 401(1) of the Postal Reorganization Act of 1970 (PRA) states that the United States Postal Service (USPS) has the power to sue and be sued and it operates as a waiver of the sovereign immunity the USPS would otherwise enjoy. Section 409(c) of the PRA prescribes the limits of the USPS's ability to be sued for state law torts by referring to 28 U.S.C.S. ch. 171, which is where the Federal Tort Claims Act is codified. More Like This Headnote

Torts > Procedure > Statutes of Limitations > Accrual of Actions > Discovery Rule

Torts > Public Entity Liability > Liability > Claim Presentation > Time Limitations

Torts > Public Entity Liability > Liability > Federal Tort Claims Act > Procedural Requirements 

*HN5* The Federal Tort Claims Act (FTCA) provides that any tort claim brought against the United States must be presented in writing to the appropriate federal agency within two years after such claim accrues. 28 U.S.C.S. § 2401(b). A claim accrues for purposes of the FTCA when a plaintiff learns that he is injured and learns the cause of his injury and not when he later learns that the defendant (or defendants) may be legally responsible for the injury. In order to be properly presented to the administrative agency, the claim must be for a sum certain. 28 C.F.R. § 14.2(a); 39 C.F.R. § 912.5(a). The FTCA's requirement that the claim be presented to the administrative agency within two years of accrual is jurisdictional. More Like This Headnote

Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview 

Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview

*HN6* It is the court's duty to determine whether it has jurisdiction even if no party raises the issue. More Like This Headnote

Administrative Law > Sovereign Immunity

Torts > Public Entity Liability > Liability > Claim Presentation > General Overview

Torts > Public Entity Liability > Liability > Federal Tort Claims Act > Procedural Requirements

*HN7* The regulations implementing the Federal Tort Claims Act and the United States Postal Service's regulations both require that an allegedly injured person submit his claim for a sum certain using Standard Form 95. 28 C.F.R. § 14.2(a); 39 C.F.R. § 912.5(a). More Like This Headnote

Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources

Governments > Federal Government > Claims By & Against

Governments > Federal Government > Employees & Officials

*HN8* Apart from 28 U.S.C.S. § 1331, which is the statute providing the federal district courts with their jurisdiction over federal questions, there is no statute which specifically provides federal employees with a cause of action or remedy for violations of their First Amendment rights. However, the Civil Service Reform Act does provide a scheme of rights and administrative remedies which provide protection for federal employees and which allow them to seek redress when they have suffered adverse employment actions. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom to Petition

Governments > Federal Government > Claims By & Against

Governments > Federal Government > Employees & Officials

*HN9* Under the Civil Service Reform Act, it is a prohibited employment practice to take or

fail to take any employment action against an employee as a result of the employee exercising any appeal, complaint or grievance right granted by any law, rule or regulation. 5 U.S.C.S. § 2302(b)(9). It is also prohibited to take any employment action if such action violates any law, rule, or regulation implementing or directly concerning, the merit system principles contained in 5 U.S.C.S. § 2301. 5 U.S.C.S. § 2302(b)(12). Section 2301 establishes that one of the merit system principles is that all employees should receive fair and equitable treatment with proper regard for their constitutional rights. 5 U.S.C.S. § 2301(b)(2). Finally, federal agencies may only take adverse employment actions for such cause as will promote the efficiency of the service. 5 U.S.C.S. § 7513(a). Under these sections, it is clear that a federal employee can vindicate his First Amendment right to petition the government for redress of grievances within that scheme.  More Like This Headnote

Governments > Federal Government > Employees & Officials 

Real Property Law > Inverse Condemnation > Regulatory Takings

*HN10* The Civil Service Reform Act permits an employee to seek redress from the Office of Special Counsel for any prohibited personnel practice. 5 U.S.C.S. § 1214(a)(1)(A). Prohibited personnel practices include (1) taking an employment action against an employee because the employee exercised any appeal, complaint or grievance right granted by any law, rule or regulation, 5 U.S.C.S. § 2302(b)(9), and (2) taking a personnel action which violates any law, rule, or regulation implementing or directly concerning, the merit system principles contained in 5 U.S.C.S. § 2301. 5 U.S.C.S. § 2302(b)(12).  More Like This Headnote

Civil Procedure > Appeals > General Overview

Governments > Federal Government > Employees & Officials

Pensions & Benefits Law > Governmental Employees > U.S. Civil Service Retirement System > Judicial Review 

*HN11* Once the Office of Special Counsel completes its review under the Civil Service Reform Act, the employee may seek further corrective action from the Merit Systems Protection Board (MSPB). 5 U.S.C.S. § 1214(a)(3). Once the MSPB completes its review, the employee may then seek judicial review. 5 U.S.C.S. § 7703(a)(1). Judicial review, however, must be sought in the United States Court of Appeals for the Federal Circuit. 5 U.S.C.S. § 7703(b)(1).  More Like This Headnote

Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies

Civil Procedure > Justiciability > Exhaustion of Remedies > Administrative Remedies

Civil Procedure > Justiciability > Exhaustion of Remedies > Failure to Exhaust

*HN12* It is a basic tenet of administrative law that a plaintiff must exhaust all administrative remedies before bringing a claim for judicial review.  More Like This Headnote

Governments > Federal Government > Employees & Officials

Labor & Employment Law > Wrongful Termination > Whistleblower Protection Act > Coverage & Definitions > Protected Activities

A0151

HN13 5 U.S.C.S. § 2302(b)(8) of the Civil Service Reform Act provides in relevant part that it is a prohibited personnel practice to take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee because of an employee's disclosure of information which the employee reasonably believes constitutes gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  More Like This Headnote

**COUNSEL:** EUGENE A. URBAN, PLAINTIFF, Pro se, HOLLAND, PA USA.

For WILLIAM J. HENDERSON, DEFENDANT: PATRICIA D. GUGIN, JAMES G. SHEEHAN, U.S. ATTORNEY'S OFFICE, PHILA, PA USA.

**JUDGES:** DIANE M. WELSH, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** DIANE M. WELSH

**OPINION:** OPINION AND ORDER

DIANE M. WELSH
UNITED STATES MAGISTRATE JUDGE

April 4, 2001

**I. Background**

This lawsuit was filed by Eugene A. Urban, the Postmaster at the Langhorne, Pennsylvania Post Office against the Postmaster General of the United States Postal Service. The plaintiff is pro se and he used a form of complaint to initiate this lawsuit. In the portion of the form captioned "Statement of Claim", the plaintiff wrote the following:

> I am filing this case for 1. Disparity 2. Discrimination 3. Reprisal for lawsuit I filed against Neil Heller, Mgr. PA operations in Dec. 1993. 4. Reprisal for stress and anxiety claim I filed in Dec. 1993. 5. Retaliation for prior EEO complaint against Neil Heller, Mgr. PA operations and DeWitt O. Harris, Dist. Mgr. on Nov. 14, 1996. 6. Conspiracy 7. Retaliation for not signing Langhorne Hempstead Agreement [*2]  8. Adverse Action 9. Defamation of Character

It is apparent that these allegations require further explanation in order to determine what claims the plaintiff is attempting to pursue. The plaintiff provided further explanation during his deposition on August 28, 2000.

At his deposition, the plaintiff did not distinguish between what he called disparity and discrimination in the complaint. (N.T. 8/28/00 at 37-40). He explained that he suffered disparity and discrimination when he was not returned to his job as the Postmaster of the Langhorne Post Office in January 1996 by Neil Heller n1 because Mr. Heller wanted to punish the plaintiff for a lawsuit he had filed against Mr. Heller and for a stress and anxiety claim he had filed in December 1993. Id. at 38-39. The plaintiff believes that he was further punished by being denied an EVA n2 bonus in 1996 and not being afforded a Postmaster representative during a March 20, 1997 meeting with Harvey White, Mr. Heller and Dominic Camaso. n3 Id. at 40.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

A0152

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 5531    Filed 04/28/2006    Page 6 of 15

Case 1:05-cv-00274-GMS    Document 42-31    Filed 04/28/2006    Page 6 of 9

n1 For the time relevant to the allegations in the complaint, Neil Heller was the Manager of Post Office Operations and he was the plaintiff's direct supervisor. (N.T. 8/28/00 at 14-15). **[*3]**

n2 Neither party has explained what EVA means in their briefs. The plaintiff also did not during his deposition. However, the record before the court includes a copy of four page letter from the plaintiff to James E. Peoples, which is dated July 11, 1997. On the first page of this letter, which is attached to the plaintiff's deposition as part of Government Deposition Exhibit 3, the plaintiff refers to EVA as Economic Value Added.

n3 The plaintiff did not expressly testify about much of the information described in the paragraph preceding this footnote. However, at his deposition, he referred to Government Deposition Exhibit 3 as the basis for his disparity and discrimination claim. (N.T. 8/28/00 at 38, 41). The specific information contained in the paragraph preceding this footnote can be found in Government Deposition Exhibit 3.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

During his deposition, the plaintiff was not asked about the next two instances of reprisal contained in the complaint. The plaintiff also did not elaborate on the retaliation he believes he suffered as a result of filing his November 14, 1996 EEO n4 complaint **[*4]** but it seems clear that the plaintiff believes the retaliation took the form of initially denying him the 1996 EVA bonus.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n4 The court understands the acronym EEO to mean Equal Employment Opportunity.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The plaintiff did discuss what he termed conspiracy at some length. In his view, Mr. White and Mr. Heller conspired against him by lying to him about the reason he was initially denied the 1996 EVA bonus. (N.T. 8/28/00 at 64-65, 70). Further, he believes it is evidence of the conspiracy that his EEO complaint about the EVA bonus was assigned to James E. Peoples, a person who had once worked in the same office as DeWitt Harris, who is Mr. Heller's direct manager. Id. at 64.

When the plaintiff discussed the retaliation he believes he suffered for not signing the Langhorne Hempstead agreement, he stated that the retaliation took the form of: (1) removing him from the Langhorne Post Office pursuant to Mr. Heller's direction in November 1993; (2) initially denying him the 1996 EVA bonus; and (3) placing him in the **[*5]** Human Relations department of the United States Postal Service, located in Philadelphia, from January 1996 to September 1996. (N.T. 8/28/00 at 76-78). When the plaintiff was asked about what he called adverse action in the complaint, he stated: "Revengeful actions taken against me, That's what he lists here as adverse action. That I was suspended, thrown out [of] work. And I never was." Id. at 74. When asked about his claim for defamation, the plaintiff said that he was defamed when United States Postal Service employees communicated false information to each other concerning why he was initially denied the

1996 EVA bonus. Id. at 74-75.

After reviewing the complaint and the plaintiff's deposition, the court finds that the plaintiff's claims are the following: that he was retaliated against by Mr. Heller for failing to sign the Langhorne Hempstead agreement; that he was retaliated against by Mr. Heller for filing a lawsuit against Mr. Heller in December 1993; that he was retaliated against by Mr. Heller for filing a stress and anxiety claim in December 1993; and that he was retaliated against by Mr. Heller for filing an EEO complaint on November 14, 1996. Retaliation against **[*6]** the plaintiff for failing to sign the Langhorne Hempstead agreement would appear to implicate the plaintiff's rights as a federal employee. See 5 U.S.C. § 2302(b)(8). Retaliation against the plaintiff for filing a lawsuit and for filing a stress and anxiety claim implicates the plaintiff's First Amendment right to petition the government for redress of grievances. See San Filippo v. Bongiovanni, 30 F.3d 424, 434-35 (3d Cir. 1994). Retaliation against the plaintiff for filing an EEO complaint implicates a violation of Title VII of the Civil Rights Act of 1964. See 42 U.S.C. § 2000e-3(a).

As a result of these alleged retaliatory motivations, the plaintiff contends that he suffered the following injuries: being removed from the Langhorne Post Office in November 1993; being placed in the Human Relations department of the United States Postal Service in Philadelphia instead of returning to the Langhorne Post Office from January 1996 to September 1996; being denied an EVA bonus for 1996; and being denied a Postmaster representative during a March 20, 1997 meeting with Harvey White, Neil Heller and Dominic Camaso. **[*7]**

The plaintiff also claims that he was defamed by United States Postal Service employees when they communicated false information to each other concerning why he was initially denied the 1996 EVA bonus. The plaintiff further claims that certain United States Postal Service employees engaged in a civil conspiracy to defame him.

The defendant has moved for summary judgment with respect to the entire complaint. However, the defendant only specifically identifies one claim of retaliation: the claim that the plaintiff was retaliated against for filing an EEO complaint on November 14, 1996. With respect to this claim, the defendant argues that the plaintiff fails to make a prima facie case of employment discrimination under Title VII of the Civil Rights Act of 1964. The defendant also identifies the defamation claim and argues that this court lacks jurisdiction over the claim. With respect to the plaintiff's other claims, the defendant lumps them together and argues that they are governed by the Civil Service Reform Act and, because the plaintiff did not pursue them before the Merit Systems Protection Board, this court cannot consider the claims now.

## II. Standard of Review [*8]

HN1 Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). An issue of fact is genuine only if there is sufficient evidence to permit a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). An issue of fact is material only if it might affect the outcome of the suit under the governing law. Id. at 248. Credibility determinations are not appropriately made by a judge in summary judgment but must be left for a jury. Id. at 255. Indeed, the evidence contained in the record is to be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

HN2 The moving party bears the initial burden of identifying for the court the basis for its motion and identifying **[*9]** the portions of the record it believes demonstrate the absence

of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once the moving party has done this, the non-moving party must produce evidence such that a reasonable jury could find for that party, in order to avoid the entry of summary judgment against it. Anderson, 477 U.S. at 248-49. The non-moving party must respond with specific factual allegations demonstrating that there is a genuine issue for trial. Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990). Conclusory factual allegations will not suffice. Id. Finally, when considering how a reasonable jury would rule, the court should apply the evidentiary standard that the jury would use at trial. Anderson, 477 U.S. at 252.

## III. Discussion

The court will first address the one retaliation claim which the defendant has identified in his motion for summary judgment. The claim at issue is that the plaintiff was retaliated against for filing an EEO complaint on November 14, 1996. The **[*10]** alleged consequence of the retaliation was the denial of the 1996 EVA bonus.

*HN3* A prima facie case of retaliation under Title VII has the following elements: (1) the plaintiff engaging in protected activity; (2) the employer taking an adverse employment action against the plaintiff; and (3) a causal connection between the plaintiff's participation in protected activity and the adverse employment action. See Robinson v. Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1997) (citing Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995)). There is no dispute that the plaintiff engaged in protected activity when he filed his EEO complaint on November 14, 1996. Instead, the defendant argues that the plaintiff cannot establish the other two elements of a prima facie case of Title VII retaliation. As will be explained, the court finds the defendant's arguments are meritorious.

The defendant argues that the plaintiff cannot demonstrate that he suffered an adverse employment action because the plaintiff was ultimately paid his 1996 EVA bonus (with interest) in March 1997. At his deposition, the plaintiff admitted that he was paid his 1996 EVA bonus on March 21, 1997 and **[*11]** that he received interest for December 1996 through March 1997. (N.T. 8/28/00 at 83-84). Since the plaintiff was eventually paid the 1996 EVA bonus with interest to compensate him for the delay in receiving the bonus, he suffered no injury. As such, he cannot make a prima facie case.

The defendant also argues that, assuming the plaintiff did suffer an injury, the plaintiff cannot establish a causal connection between the injury and his protected conduct. The protected conduct in this case was the plaintiff filing an EEO complaint on November 14, 1996. The defendant notes that Mr. Heller had recommended denying the plaintiff his EVA bonus on October 1, 1996. The defendant supports his argument by submitting a copy of a memorandum from Mr. Heller to DeWitt O. Harris wherein Mr. Heller recommends that the plaintiff not receive a 1996 EVA bonus. This memorandum is dated October 1, 1996. Although the plaintiff believes that this memorandum was backdated, see Plaintiff's February 22, 2001 Letter Response at 2, he has provided no evidence to support his belief. Since there is no evidence to cast doubt upon the memorandum's accuracy concerning when it was written, the court finds that **[*12]** a reasonable jury could only conclude that Mr. Heller's participation in the decision to initially deny the plaintiff his 1996 EVA bonus occurred on October 1, 1996. This was more than a month before the plaintiff filed an EEO complaint. As such, it would be impossible for a reasonable jury to conclude that Mr. Heller initially recommended that the plaintiff not receive the 1996 EVA bonus as a result of the plaintiff's November 14, 1996 EEO complaint. In short, there is no causal connection involving Mr. Heller between the plaintiff's protected activity and his alleged injury.

The defendant next seeks summary judgment on the plaintiff's claim that he was defamed when United States Postal Service ("USPS") employees communicated false information to each other concerning why he was initially denied the 1996 EVA bonus. The defendant argues

Get a Document - by Citation - 2001 U.S. Dist. LEXIS 5531

Case 1:05-cv-00274-GMS    Document 42-3    Filed 04/28/2006    Page 9 of 15

Page 9 of 14

that the plaintiff's claim is subject to the terms of the Federal Tort Claims Act ("FTCA") and, because it was never presented administratively to the USPS, this court lacks jurisdiction to consider it.

HN4 Section 401(1) of the Postal Reorganization Act of 1970 ("PRA") states that the USPS has the power to sue and be sued and it operates as a waiver **[*13]** of the sovereign immunity the USPS would otherwise enjoy. See Davric Maine Corp. v. United States Postal Service, 238 F.3d 58, 61 (1st Cir. 2001) (citing Loeffler v. Frank, 486 U.S. 549, 556, 100 L. Ed. 2d 549, 108 S. Ct. 1965 (1988)). Section 409(c) of the PRA prescribes the limits of the USPS's ability to be sued for state law torts by referring to chapter 171 of Title 28 of the United States Code, which is where the FTCA is codified. See Davric, 238 F.3d at 61-62; Global Mail Limited v. United States Postal Service, 142 F.3d 208, 210 (4th Cir. 1998).

HN5 The FTCA provides in relevant part that any tort claim brought against the United States must be "presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). The Supreme Court has held that a claim accrues for purposes of the FTCA when a plaintiff learns that he is injured and learns the cause of his injury and not when he later learns that the defendant (or defendants) may be legally responsible for the injury. United States v. Kubrick, 444 U.S. 111, 117-25, 62 L. Ed. 2d 259, 100 S. Ct. 352 (1979). **[*14]** In order to be properly presented to the administrative agency, the claim must be for a sum certain. 28 C.F.R. § 14.2(a); 39 C.F.R. § 912.5(a). The FTCA's requirement that the claim be presented to the administrative agency within two years of accrual is jurisdictional. Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995).

The plaintiff's defamation claim is based upon his belief that USPS employees communicated false information to each other about him when they discussed the reasons he was initially denied his 1996 EVA bonus. (N.T. 8/28/00 at 74-75). In his view, the false information consists of most of the information contained in Mr. Heller's October 1, 1996 memorandum to Mr. Harris. Id. at 69-70. The plaintiff did not learn of the contents of Mr. Heller's October 1, 1996 memorandum until he received documents from the USPS pursuant to Freedom of Information Act ("FOIA") requests he made in March 1997. Id. at 64-65. The plaintiff's July 11, 1997 letter to James E. Peoples suggests that he received the crucial FOIA documents on April 1, 1997 and April 3, 1997. n5 However, in an April 2, 2001 letter **[*15]** to the court, the plaintiff contends that he did not receive the FOIA documents until April 5, 1997, at the earliest.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 As noted previously, see supra n.2, a copy of the July 11, 1997 letter to Mr. Peoples is attached to the plaintiff's deposition for this case as part of Government Deposition Exhibit 3.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Assuming that USPS employees did in fact communicate false information about the plaintiff, since the plaintiff ultimately received his EVA bonus on March 21, 1997, it seems reasonable to expect that the USPS employees would cease to communicate any information (whether truthful or false) concerning why the plaintiff was initially denied his 1996 EVA bonus after March 21, 1997. This means that the plaintiff's injury (being defamed) most likely occurred no later than March 21, 1997. However, that does not mean that the plaintiff actually learned of his injury at that time. Based on the plaintiff's deposition testimony, it is clear that he did not learn of the allegedly false information communicated by Mr. **[*16]** Heller in his October 1, 1996 memorandum until after he received documents pursuant to his March 1997 FOIA requests. (N.T. 8/28/00 at 64-65, 70, 74-75). According to the plaintiff's April 2, 2001

letter to the court, he received the crucial FOIA documents by April 5, 1997.

Based on this evidence, the court is of the view that the plaintiff's defamation cause of action accrued by April 5, 1997, which is when he learned that the alleged defamation had occurred. See Kubrick, 444 U.S. at 117-25. Therefore, the FTCA required that the plaintiff present his defamation claim to the USPS by April 5, 1999. See 28 U.S.C. § 2401(b). In his motion, the defendant represents that the plaintiff has never submitted a defamation claim to the USPS. See Brief in Support of Federal Defendant Postal Service's Motion for Summary Judgment ("Defendant's Brief") at 8. In his February 22, 2001 letter response to the summary judgment motion, the plaintiff does not contend that he ever filed his defamation claim with the USPS nor has he submitted any evidence that would indicate he has. Further, the defendant submitted an affidavit by attorney Deborah A. Davis **[*17]** along with his March 28, 2001 letter to the court. Ms. Davis avers that, as part of her employment in the USPS law department, she has access to all USPS records maintained for tort claims filed administratively against the USPS for torts occurring in Pennsylvania. Affidavit of Deborah A. Davis at P 1. She further avers that she has searched those records and has found no evidence that the plaintiff ever filed an administrative claim for defamation with the USPS. Id. at P 3.

In the face of Ms. Davis' averment that the plaintiff has never presented his defamation claim to the USPS, an averment which is based upon her search of USPS records, and in light of the plaintiff's failure to submit any evidence to cast doubt upon Ms. Davis' averment, there is no genuine issue with respect to this material fact and it can only be concluded that the plaintiff has never submitted his defamation claim to the USPS. Since the plaintiff has failed to submit his defamation claim to the USPS within two years of its accrual, the court lacks jurisdiction over the claim, see Deutsch, 67 F.3d at 1091, and the claim must be dismissed.

The defendant next contends that the plaintiff fails **[*18]** to state a claim for conspiracy because "the only participants in the 'conspiracy' are Postal employees - agents of the sole conspirator, the Postal Service." Defendant's Brief at 7 n.2. The defendant cites no authority for his characterization of conspiracy law. However, even more fundamentally, the defendant fails to note that this conspiracy claim sounds in state tort law, see Skipworth v. Lead Industries Association, Inc., 547 Pa. 224, 690 A.2d 169, 174 (Pa. 1997) (stating the elements for a civil conspiracy cause of action), and is, therefore, governed by the FTCA. Since the plaintiff's claim is that USPS employees conspired to defame him, it is the court's view that this cause of action also accrued at the same time that the defamation cause of action accrued. As noted earlier, the defamation cause of action accrued by April 5, 1997 and so the FTCA required that the plaintiff present that claim and the related conspiracy claim to the USPS by April 5, 1999.

As noted previously, the FTCA's requirement that a plaintiff file his claim administratively within two years of its accrual is jurisdictional. See Deutsch, 67 F.3d at 1091. The defendant's **[*19]** summary judgment motion and the plaintiff's response to the summary judgment motion were silent with respect to whether the plaintiff had filed his conspiracy claim administratively within two years of its accrual. _HN6_ Because it is the court's duty to determine whether it has jurisdiction even if no party raises the issue, see Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998), and because the court would lack jurisdiction if the plaintiff had failed to file his conspiracy claim administratively within two years of its accrual, the court ordered the parties to address this question. The plaintiff responded with two letters, one dated March 26, 2001 and one dated April 2, 2001; the defendant responded with a letter dated March 28, 2001. As noted previously, the defendant attached to his March 28 letter an affidavit from Deborah A. Davis, who is an attorney with the USPS's law department. In her affidavit, Ms. Davis averred that her search of USPS records revealed that the plaintiff has never submitted his conspiracy claim to the USPS. Affidavit of Deborah A. Davis at P 3.

In his March 26, 2001 letter to the court, the plaintiff states that he **[*20]** presented his conspiracy claim to the USPS in a Prehearing Statement addressed to Francis A. Polito, an administrative judge with the Equal Employment Opportunity Commission ("EEOC"). In his April 2, 2001 letter to the court, the plaintiff again relies upon the Prehearing Statement he submitted on February 19, 1999. However, the plaintiff has submitted no evidence demonstrating that he presented his state law conspiracy claim to the USPS in compliance with FTCA requirements. *HN7* The regulations implementing the FTCA and the USPS's regulations both require that an allegedly injured person submit his claim for a sum certain using Standard Form 95. See 28 C.F.R. § 14.2(a); 39 C.F.R. § 912.5(a). The plaintiff does not represent that he submitted his state law conspiracy claim to the USPS using Standard Form 95, nor has he submitted any evidence that would indicate he has.

In the face of Ms. Davis' averment that the plaintiff has never properly presented his conspiracy claim to the USPS, an averment which is based upon her search of USPS records, and in light of the plaintiff's failure to submit any evidence to cast doubt upon Ms. Davis' **[*21]** averment, there is no genuine issue with respect to this material fact and it can only be concluded that the plaintiff has never properly submitted his conspiracy claim to the USPS. Since he has not done so within two years of the claim's accrual, this court lacks jurisdiction over the claim, see Deutsch, 67 F.3d at 1091, and it must be dismissed.

The defendant has moved for summary judgment with respect to the plaintiff's remaining claims on the ground that they are all governed by the Civil Service Reform Act ("CSRA") and so they first had to be presented to the Merit Systems Protection Board ("MSPB"). See Defendant's Brief at 9. In so arguing, the defendant has failed to take note of the legal basis for each of the plaintiff's claims. As explained earlier, the plaintiff has two First Amendment claims remaining and one that would appear to be grounded in principles of federal employment law. The court will initially consider the plaintiff's First Amendment claims.

*HN8* Apart from 28 U.S.C. § 1331, which is the statute providing the federal district courts with their jurisdiction over federal questions, there is no statute which specifically **[*22]** provides federal employees with a cause of action or remedy for violations of their First Amendment rights. However, the CSRA does provide a scheme of rights and administrative remedies which provide protection for federal employees and which allow them to seek redress when they have suffered adverse employment actions. *HN9* Under the CSRA, it is a prohibited employment practice to take or fail to take any employment action against an employee as a result of the employee exercising "any appeal, complaint or grievance right granted by any law, rule or regulation." 5 U.S.C. § 2302(b)(9). More generally, it is also prohibited to take any employment action if such action "violates any law, rule, or regulation implementing or directly concerning, the merit system principles contained in section 2301 of this title." 5 U.S.C. § 2302(b)(12). Section 2301 of Title 5 establishes that one of the merit system principles is that all employees should receive "fair and equitable treatment . . . with proper regard for their constitutional rights." 5 U.S.C. § 2301(b)(2). Finally, federal agencies may only take adverse employment actions **[*23]** "for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). Taking into account all these parts of the comprehensive scheme created by Congress, it is clear that a federal employee can vindicate his First Amendment right to petition the government for redress of grievances within that scheme. The question remains whether the court should, nonetheless, imply a separate damages cause of action under the First Amendment for federal employees who allege that they have suffered adverse employment actions as a result of their exercise of First Amendment rights.

In Bush v. Lucas, 462 U.S. 367, 76 L. Ed. 2d 648, 103 S. Ct. 2404 (1983), the Supreme Court was faced with a case involving whether it should imply a cause of action under the First Amendment for a federal employee who had been demoted and suffered a reduction in pay as a result of his exercise of his First Amendment rights. That case involved the remedial

scheme for federal employees that existed prior to the enactment of the CSRA. Nonetheless, in the course of its opinion, the Court noted that the prior scheme was very similar to the scheme created by the CSRA. **[*24]** See id. at 386-88 & nn. 30, 32-33, 35. The Court held that, given the comprehensive scheme that Congress had created, it was inappropriate to imply a new cause of action under the First Amendment. Id. at 390. The Court concluded that the decision to create such a cause of action should be left to Congress. Id.

This case is similar to Bush v. Lucas because the CSRA creates a comprehensive scheme for redressing the First Amendment violations the plaintiff believes he has suffered. The Supreme Court recognized in Bush v. Lucas that the CSRA was similar to the comprehensive scheme it had replaced. See 462 U.S. at 386-88 & nn. 30, 32-33, 35. As such, Bush v. Lucas should control the outcome in this case and the court declines to imply an independent First Amendment cause action for damages. Instead, the plaintiff must seek redress within the framework Congress created by enacting the CSRA.

*HN10* The CSRA permits an employee to seek redress from the Office of Special Counsel for any prohibited personnel practice. See 5 U.S.C. § 1214(a)(1)(A). Prohibited personnel practices include: (1) taking an employment **[*25]** action against an employee because the employee exercised "any appeal, complaint or grievance right granted by any law, rule or regulation," 5 U.S.C. § 2302(b)(9); and (2) taking a personnel action which "violates any law, rule, or regulation implementing or directly concerning, the merit system principles contained in section 2301 of this title." 5 U.S.C. § 2302(b)(12). Section 2301 of Title 5 establishes that one of the merit system principles is that all employees should receive "fair and equitable treatment . . . with proper regard for their constitutional rights." 5 U.S.C. § 2301(b)(2). *HN11* Once the Office of Special Counsel completes its review, the employee may seek further corrective action from the MSPB. See 5 U.S.C. § 1214(a)(3). Once the MSPB completes its review, the employee may then seek judicial review. See 5 U.S.C. § 7703 (a)(1). Judicial review, however, must be sought in the Court of Appeals for the Federal Circuit. See 5 U.S.C. § 7703(b)(1).

The defendant does not mention the requirement to seek corrective action from the **[*26]** Office of Special Counsel but he does represent that the plaintiff never complained to the MSPB about the retaliation the court has identified as being allegedly caused by the plaintiff's exercise of his First Amendment rights. See Defendant's Brief at 9. In his February 22, 2001 letter response to the summary judgment motion, the plaintiff does not contend that he ever sought corrective action from the Office of Special Counsel or that he sought corrective action from the MSPB, nor has he submitted any evidence that would indicate he has. In the absence of any evidence that the plaintiff has exhausted the administrative remedies available to him, the court must conclude that he has not.

*HN12* "It is a basic tenet of administrative law that a plaintiff must exhaust all administrative remedies before bringing a claim for judicial review." Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997) (citing McKart v. United States, 395 U.S. 185, 193, 23 L. Ed. 2d 194, 89 S. Ct. 1657 (1969)). In this case, the plaintiff has failed to exhaust his administrative remedies with respect to his First Amendment claims. Thus, the court cannot exercise judicial review **[*27]** over them. In addition, even if the plaintiff had exhausted his administrative remedies, this court would not be the proper forum for his First Amendment claims because the CSRA establishes that the Court of Appeals for the Federal Circuit is the proper forum. See 5 U.S.C. § 7703(b). For these reasons, the defendant is entitled to judgment as a matter of law on the plaintiff's claims that he was retaliated against for exercising his First Amendment rights.

The plaintiff's claim concerning the retaliation he allegedly suffered as a result of his failure to sign the Langhorne Hempstead Agreement remains. He testified that the reason he refused to sign this agreement was that he believed it was wasteful and would cause the Postal

Service to inefficiently expend over a million dollars. (N.T. 8/28/00 at 65-66). Assuming, as the court should on summary judgment, that this unrebutted allegation is true, the plaintiff would appear to be claiming that the retaliation he suffered was caused by his disclosing information that he reasonably believed was evidence of a gross waste of funds. As such, his claim fits within 5 U.S.C. § 2302(b)(8) n6 [*28] and he is permitted to appeal any retaliatory employment actions resulting from his disclosure of the information to the MSPB. See 5 U.S.C. § 1221. However, such claims must first be presented to the Office of Special Counsel. See Briley v. National Archives and Records Administration, 236 F.3d 1373, 1377 (Fed. Cir. 2001) (citing 5 U.S.C. § 1214(a)(3)). Once administrative remedies have been exhausted, judicial review lies in the Court of Appeals for the Federal Circuit. See 5 U.S.C. § 7703(b).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 *HN13* 5 U.S.C. § 2302(b)(8) provides in relevant part that it is a prohibited personnel practice to: "take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee . . . because of," an employee's disclosure of information which the employee reasonably believes constitutes, "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety."

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*29]

The defendant does not mention the requirement to seek corrective action from the Office of Special Counsel but he does represent that the plaintiff never complained to the MSPB about any retaliation he allegedly suffered as a result of his failure to sign the Langhorne Hempstead Agreement. See Defendant's Brief at 9. In his February 22, 2001 letter response to the motion for summary judgment, the plaintiff does not contend that he ever sought corrective action from the Office of Special Counsel or that he filed an appeal to the MSPB, nor has he submitted any evidence that would indicate he has. In the absence of any evidence that the plaintiff has exhausted the administrative remedies available to him, the court must conclude that he has not.

As noted previously, a plaintiff is expected to exhaust all administrative remedies available to him before bringing a claim for judicial review. See Robinson v. Dalton, 107 F.3d at 1020. In this case, the plaintiff has failed to exhaust his administrative remedies with respect to this claim. Thus, the court cannot exercise judicial review over the claim. In addition, even if the plaintiff had exhausted his administrative [*30] remedies, this court would not be the proper forum for his claim because the CSRA establishes that the Court of Appeals for the Federal Circuit is the proper forum. See 5 U.S.C. § 7703(b). For these reasons, the defendant is entitled to judgment as a matter of law on the plaintiff's claim that he was retaliated against for not signing the Langhorne Hempstead agreement.

An implementing order is attached.

ORDER

AND NOW, this 4th day of April, 2001, for the reasons contained in the attached Opinion, it is hereby ORDERED that:

  1. The defendant's motion for summary judgment (Document No. 16) is GRANTED;

  2. Judgment is hereby entered in favor of the defendant, William J. Henderson,

and against the plaintiff, Eugene A. Urban.


BY THE COURT:

DIANE M. WELSH

UNITED STATES MAGISTRATE JUDGE


Service: **Get by LEXSEE®**
Citation: **2001 us dist lexis 5531**
View: **Full**
Date/Time: Friday, April 28, 2006 - 10:01 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**A0161**

## CERTIFICATE OF SERVICE

This is to certify that two (2) copies of the Appendix to Defendant's Opening Brief in Support of its Motion For Summary Judgment were served by electronic filing and hand-delivery this 28th day of April 2006 on:

> Timothy J. Wilson, Esquire
> Margolis Edelstein
> 1509 Gilpin Avenue
> Wilmington, DE  19806
>
> *Counsel for Plaintiff*

> */s/ Richard M. Donaldson*
> Richard M. Donaldson (DE Bar No. 4367)